HOMA-OKLA OIL-CO. v. PARSONS et al.

No. 15850—Opinion Filed Oct. 27, 1925.

**1. Contracts—Construction — Acts of Parties as Aid.**

Where the meaning of the terms used in a written contract is not clear, the subsequent acts of the parties showing the construction they have put upon it themselves are to be looked to by the court.

**2. Oil and Gas — Construction of Drilling Contract—Liability for Labor and Material.**

Under the terms of the contract sued on, held: (1) The contract as to the $12,500 fund was for the benefit of those furnishing labor, material, and supplies used in drilling the well. (2) When the well had reached a depth of 3,000 feet, the oil company was liable to those furnishing labor, material, and supplies used in drilling, to the extent of the balance of the $12,500 not previously paid out in pursuance of the contract. (3) The oil company was not liable for the payment of any obligation assumed by H. and G. under the contract. (4) Judgment in favor of those furnishing labor, material, and supplies used in sinking the well and against the oil company for moneys received by it from the sale of leases and used in paying delayed rentals on the leases included in the acreage or in payments which should have been made by H. and G. in drilling the well, erroneous.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Grady County; M. W. Pugh, Assigned Judge.

Action by C. W. Parsons et al. against Homa-Okla Oil Company et al. Judgment for plaintiffs and interveners, and defendant named appeals. Judgment against the defendant named reversed for further proceedings.

Henshaw & Hough and Pearson & Baird. for plaintiff in error.

Bond, Melton & Melton, for defendants in error.

Opinion by RAY, C. Charles J. Hagerling and W. J. Dean secured five-year commercial oil and gas leases on 1,660 acres in Grady county, the several leases being deposited in escrow in bank to be delivered to Hagerling and Dean provided a well was spudded in on a particularly described tract within the acreage on or before May 10, 1923. In order to secure sufficient funds with which to sink the well to the required depth, they entered into a written contract with the Homa-Okla Oil Company, a corporation, plaintiff in error, on the 21st day of April, 1923. The material parts of that contract necessary to be considered are as follows:

"It is understood that all of the aforesaid oil and gas leases are in escrow at the Farmers National Bank of Chickasha, Okla., accompanied by an agreement on the part of the lessors for the delivery of same to the lessee upon the spudding in of a well to be located on sections 33 and 34, twp. 6 north, range 6 west or sections 3 or 4 in twp. 5 north, range 6 west, actual drilling to begin by May 10, 1923; except the assignment of lease to be obtained from the Tidal Osage Oil Company and the departmental lease; and,

"Whereas, in consideration of the conditions and agreements hereinafter set forth, the said first parties have agreed and do hereby agree to deliver to the Homa-Okla Oil Company the original oil and gas leases covering the above described lands, together with due, legal and regular assignments thereof, executed in blank, together with abstracts of title covering the same, all showing merchantable title, the possession of said original leases and assignments to be at all times vested in the said Homa-Okla Oil Company, and further conditioned that if said leases or any part thereof be sold or assigned to other parties, the proceeds thereof shall be collected and received by the said party of the second part to be disbursed according to the conditions hereinafter set out.

"In consideration of the foregoing the said party of the second part does hereby agree to advance the sum of $12,500 for the purpose of defraying the expense incident

to the drilling of an oil and gas well upon the tract first herein set out, payable as follows: (a) One-third to be advanced when the well is spudded in on or before May 10, 1923, and titles are approved by second party's attorneys. (b) One-third to be payable when the well is drilled to a depth of 1,500 feet. (c) One-third to be payable when the well is drilled to a depth of 3,000 feet, unless oil or gas in paying quantities be obtained at a lesser depth. (d) That said sum or sums are to be paid only for material, labor and supplies actually used in connection with the drilling of said well, all bills or accounts to bear the personal O. K. of W. J. Dean, one of the parties of the first part.

"It is further agreed and understood that as a part of this contract, the said first parties are to furnish or procure all machinery, material and appliances necessary for drilling and completing said well, inclusive of rig, water, fuel, and all other equipment incident thereto, necessary for the drilling of said well to 3,000 feet, and at the completion or abandonment of said well, all of said machinery, material, and equipment owned by first parties, to be returned to first parties, and that part thereof purchased during the drilling of said well to be owned jointly by the parties hereto.

"It is further agreed as a part hereof that said first parties are to erect derrick and spud in on or before May 10, 1923, and prosecute the work actively and continuously to completion under the supervision of Charles J. Hagerling, who is to receive the sum of $10 per day as compensation therefor, conditioned at all times that the drilling of said well shall be diligently conducted in a good and workmanlike manner, and K. C. Dailey of the Homo-Okla Company shall have full and free access to said well and be advised with respect to the various formations and be consulted with respect thereto, and furnished daily with a true and correct log of said well, if requested; rat tailing and running of core barrel to be done when necessary.

"It is further agreed as part hereof that it is contemplated by the parties hereto that sufficient moneys will be realized from the sale of oil and gas leases out of said block with which to finance the drilling of said well, but in the event said money is not so realized or obtained, then the second party is hereby obligated only in the sum of $12,500, payable as hereinbefore set out, and it is understood that if other additional sums are needed to complete said well to the required depth. same is to be furnished by said first parties, and said first parties are obligated hereby to complete said well to the required depth of 3,000 feet unless oil or gas in paying quantities be found at a lesser depth.

"It is further understood and agreed as a part hereof that at the completion of said well, if the said second party shall have on hand any portion of said sum of $12,500 so to be advanced or of moneys received from the sale of oil and gas leases, the same is to be disbursed as follows, to wit:

"(1) To first parties and second party in the ratio of one-fifth and four-fifths, respectively, as repayment of the sum of $2,500 expense money advanced by first parties and the sum of $12,500 advanced by second party.

"(2) After the said parties have been fully reimbursed as hereinbefore set out, the remainder, if any, shall be apportioned to each of said parties in equal amounts."

This contract was recorded in the office of the county clerk of Grady county. Hagerling and Dean spudded in the well and sank it to a depth of about 2,500 feet, when their funds appear to have been exhausted and they were unable to pay the workmen. The Homa-Okla Oil Company had paid out one-third of the $12,500 when the well was spudded in, and paid another one-third according to contract when the well had reached a depth of 1,500 feet. At the time that Hagerling and Dean had ceased paying their obligations for want of funds, a representative of the Homa-Okla Oil Company, and its secretary and bookkeeper, represented to those engaged in furnishing labor on the well that the books of that company showed that it still retained in its possession, under the contract, approximately $4,000, which would be applied according to the terms of the contract when the well had reached a depth of 3,000 feet, but no part of that fund would be paid until the well had reached that depth. Pursuant to that representation, C. W. Parsons, plaintiff, and a large number of others, made defendants in this suit, continued work on the well until it was sunk to a depth of 3,000 feet. Parsons then commenced this suit against Hagerling and Dean and the Homa-Okla Oil Company to recover the amount of wages alleged to be due him for labor performed in sinking the well, and to foreclose his laborer's lien upon the leasehold interest upon the 40 acres upon which the well was located. It is alleged in the petition that Hagerling, Dean, and the Homa-Okla Oil Company were the owners of an oil and gas lease covering that particular 40 acres. Other allegations were made sufficient to show that he had complied with the statutes in preserviing his lien. In a separate paragraph of the petition, it is alleged that in the event the Homa-Okla Oil Company was not an owner of the oil and gas lease, then it had made an agreement in writing

with the defendants Hagerling and Dean, by which it had agreed to advance $12,500 for drilling the well, and those paragraphs of the contract, above referred to, deemed material, were set out in the petition. Plaintiff prayed judgment that the Homa-Okla Oil Company be restrained from paying out any of the $4,000 due on the contract, and that it be required to account for all sums expended on the well for material, labor, and supplies, and for general relief. The other lien claimants were made parties defendant and appeared and by answer and cross-petition set up their several claims.

The defendant Homa-Okla Oil Company, by its answer, denied generally the allegation of the petition and cross-petitions with the exception of certain admissions made. It is admitted the well was drilled upon the particular tract of land as alleged. It admitted that under the terms of the contract it agreed to advance the sum of $12,500 for the purpose of defraying expenses incident to the drilling of the well upon the tract described: one-third to be advanced when the well was spudded in, one-third payable when the well was drilled to a depth of 1,500 feet, and one-third when it was drilled 3,000 feet; conditioned that the sum or sums were to be paid only for material, labor, and supplies actually used in connection with drilling the well. It then specially pleaded that part of the contract which provides the conditions as to the payment of the $12,500. It then alleged that the contract had at all times been of record in Grady county in full force and effect, and that it had fully complied with its terms and conditions, and was not liable to the plaintiff or any of the other parties alleged to be lienholders in excess of that amount. It then alleged that under the contract it was liable to the payment of $12,500 to be used in drilling the well, and to be advanced in payment of material, labor, and supplies, according to the terms of the contract. It alleged that it received $4,000 in cash for the sale of leases, as contemplated by the contract, and that it had expended a total of $15,154.59, leaving a balance on hand of $1,345.41 to be applied in liquidation of such debts as the court determined, and that a true and correct statement of the account was attached as an exhibit. It then alleged that the contract for performing labor and furnishing supplies, if there was such a contract, was with W. J. Dean and Charles J. Hagerling, with full knowledge of the contract, its terms, and conditions, and that it was not liable to the plaintiff or cross-petitioners in any sum or sums. The itemized account

attached to the answer shows that among the items paid out were "lease rentals, $1,190", and "lease cost, commissions and additional expenses, that should have been paid out by Hagerling, $2,133.09." These are the items here in question.

It is contended by the plaintiff and cross-petitioners that under the terms of the contract, the Homa-Okla Oil Company was obligated to account for the money realized from the sale of the leases, while the defendant contends that the money realized from the sale of the leases could be applied in any way mutually agreeable to the parties to the contract, and that the items paid for delayed rentals, and other items which should have been paid by Hagerling, were properly paid out of that fund.

Judgments were entered for plaintiff and interveners, totaling approximately $4,400 and interest.

We think the authorities, cited to sustain the proposition that a subcontractor is not entitled to personal judgment against the property in the absence of an express contract with the owner, are not applicable here, for the reason that the personal judgment entered against the Homa-Okla Oil Company was not upon the theory that the parties had a lien under the lien statute, but was entered upon the theory that the contract between Hagerling and Dean and the Homa-Okla Oil Company was made for the benefit of those furnishing labor, material, and supplies in sinking the well. Likewise, we think the question of estoppel is not in the case, for the reason that it was not pleaded and not insisted upon by the plaintiffs in their brief. Neither is the question as to whether the lien claimants properly preserved their several liens here for consideration, for the reason that no lien was foreclosed upon any of the property of the Homa-Okla Oil Company.

Under the general proposition that a general agreement between two parties is not a contract for the benefit of third parties, so as to entitle the latter to enforce the same, it is contended that the contract between Hagerling and Dean on the one part, and the Homa-Okla Oil Company on the other part, was not made for the benefit of those furnishing the labor, material and supplies used in drilling the well. It is also contended that under section 4988, C. S. 1921, even if the contract had been made for the benefit of third parties, still they had the right to rescind it at any time before the enforcement by the third parties, for

whose benefit it was made. The statute reads as follows:

"A contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it."

We think that when the terms of the contract are considered, together with the circumstances under which it was entered into, and the construction placed upon the contract by the Homa-Okla Oil Company which is made to appear by its conduct and its answer filed in the case, it must be held that the contract was entered into for the benefit of those furnishing labor, material and supplies in drilling the well. Hagerling and Dean had secured oil and gas leases on a large acreage. The leases were deposited in escrow to be delivered to them when the well was spudded in on or before May 10, 1923. When the time was near at hand for spudding in the well, Hagerling and Dean found themselves without funds, and apparently without sufficient credit, to spud in the well so as to entitle them to receive the leases. April 21, 1923, which was about 20 days before Hagerling and Dean were obligated to spud in the well, this contract was entered into. It was placed of record in the office of the county clerk as notice to the public. By that contract they acquired the funds and credit to spud in the well and sink it to a depth of 1,500 feet before the second payment was due to be made by the Homa-Okla Oil Company. Thereafter they were enabled, by the same means, to sink the well to a depth of approximately 2,500 feet, at which depth they found themselves unable to meet their payroll. Representatives of the Homa-Okla Oil Company then went to the well and informed those engaged in working on the well, that of that fund, of which they had notice by reason of the recorded contract, they still had on hand a sum approximately $4,000, which was subject to the payment for labor, material and supplies, provided the well was sunk to a depth of 3,000 feet, but not otherwise. By its answer the company pleaded that it was obligated for the payment for labor, material, and supplies furnished in drilling the well to the amount of $12,500, and that there remained in its hands, to be applied as the court should find and direct, the sum of $1,345.41.

It is a well-settled rule that where the meaning of the terms used in a written contract are not clear, the subsequent acts of the parties showing the construction they have put upon the agreement themselves are to be looked to by the court. Rider v. Morgan, 31 Okla. 98, 119 Pac. 958; Lafayette v. Lafayette, 64 Okla. 93, 166 Pac. 169.

We think that when the contract between these parties was placed of record, notice was thereby given to the public and to those furnishing labor, materials and supplies used in sinking the well, that the particular fund provided in the contract was set apart for that particular purpose. It represented to those engaged in furnishing labor, materials and supplies used in sinking the well, after the funds of Hagerling and Dean had been exhausted, that the particular fund was received for that purpose to be paid when the well had reached a depth of 3,000 feet, but not otherwise. It pleaded that the balance remaining of $1,345.41 was due and payable for labor and materials furnished in drilling the well. By those acts it interpreted the contract, as to the $12,500 fund, as having been made for the benefit of those furnishing labor, material and supplies furnished in drilling the well.

It is made clear by the terms of the contract that the Homa-Okla Oil Company was to be bound for the sum of $12,500 only, and that sum to be used exclusively in payment for labor, material and supplies furnished and used in drilling the well, and that Hagerling and Dean were to furnish or procure all materials necessary for drilling and completing a well, inclusive of rig, water, fuel, and all other equipment incident thereto necessary for drilling the well to a 3,000 foot depth, and when the well should be completed, or abandoned, that all the material, machinery and equipment furnished by Hagerling and Dean should be returned to them as their property, and any part thereof which was purchased during the drilling was to be jointly owned by the parties. By the next paragraph of the contract it is provided, "that it is contemplated by the parties hereto that sufficient monies will be realized from the sale of oil and gas leases out of said block with which to finance the drilling of said well. * * *" Then follows the limitations upon the liability of the Homa-Okla Oil Company to $12,500 payable as above stated. It will be observed that there was a clear distinction between the use or application to be made of the two funds. Of the $12,500 to be paid by the Homa-Okla Oil Company, it was specifically provided that it should be used only in payment for labor, materials and supplies furnished and used in drilling the well, but as to funds to be realized from the sale of oil and gas leases out of the block, "with which to finance the drilling of said well", we think it was clearly meant that if sufficient money was realiz-

ed from the sale of oil and gas leases out of the block, then that particular fund was to be used in taking care of the entire expense of drilling the well, including the labor, material and supplies used in sinking the well, as well as for procuring all the machinery appliances necessary in drilling, inclusive of rig, water, fuel, and all other equipment incident thereto which Hagerling and Dean were obligated to furnish. That construction is supported by the provision of the contract that at the completion of the well, if the Homa-Okla Oil Company should have on hand any portion of the $12,500 to be advanced by it, or of money received from the sale of oil and gas leases, the same was to be disbursed to the parties in the proportion of 1/3th to 4/5ths, respectively, as a repayment of the sum of $2,500, expense money advanced by Hagerling and Dean, and the sum of $12,500, advanced by the Homa-Okla Oil Company, and after the parties should be so fully reimbursed, the remainder, if any, to be apportioned to the parties in equal amounts.

After reaching the conclusion that the contract was entered into for the benefit of those furnishing labor, material and supplies used in sinking the well as to the $12,500 fund furnished by the oil company, and that the fund to be realized from the sale of any of the leases out of the block was for the purpose of financing the drilling of the well, and that the $12,500 to be paid by Homa-Okla Oil Company was to be used in payment for material, labor and supplies furnished and used in sinking the well only, the question then arises as to whether the payment of the two items, "lease rentals $1,190" and "lease costs, commissions and additional expenses that should have been paid by Hagerling, $2,133.09", were properly paid by the Homa-Okla Oil Company out of the moneys received from the sale of oil and gas leases.

According to the terms of the contract, the consideration to be received by the Homa-Okla Oil Company for the $12,500 agreed to be paid was that when the well was sunk to a depth of 3,000 feet, unless oil or gas should be discovered at a lesser depth, it should receive one-half of the acreage included in the block of leases, with the exception of the 40 acres which was to be jointly owned by the parties. Having that in view, together with the further fact that the contract contained no definite provision that any of the acreage should be sold, but only provided that if any of the leases should be sold, then, in that event, the money realized from such sale should be used in financing the drilling of the well,

and the further fact that the only definite funds provided by the contract to be used in drilling the well was $12,500 to be furnished by the Homa-Okla Oil Company to be used in payment of the labor, material and supplies furnished and used in sinking the well, we think a fair and reasonable interpretation of the contract is that the money realized from the sale of leases could properly be used in payment of delayed lease money for any leases upon any of the acreage embraced within the 1,660-acre block. We think such interpretation is in harmony with the interpretation of the parties, for if their leases or any of them should be forfeited for nonpayment of delayed rentals, then it would render it impossible for the Homa-Okla Oil Company to receive the consideration contemplated by the contract for its expenditure of $12,500 agreed to be expended. It having been stipulated by the parties at the time of trial that the item of $1,190 was expended for delayed rental on the leases included in the block upon which the well was drilled, it follows that it was properly expended by the Homa-Okla Oil Company under the terms of the contract, and the judgment to that extent was erroneous. As to the items of $2,133 lease cost, commission and additional expense that should have been paid by Hagerling, it was stipulated that it was paid as such, but no part of it was paid for labor, material or supplies used in the drill of the well. We think that if, in the process of drilling the well, it was found that Hagerling and Dean did not have sufficient funds of their own to carry out their part of the contract, and by mutual consent the moneys, or any part thereof, received by the Homa-Okla Oil Company from the sale of leases, was expended in payment of such obligations assumed by Hagerling and Dean under the contract, or to preserve the leases, then it was a proper expenditure within the meaning of the contract.

The item of $1,500 rental for a rig, leased by the Comanche Drilling Company to Hagerling and Dean and by them used in drilling the well, was an obligation assumed by Hagerling and Dean and not by the Homa-Okla Oil Company, and not payable by that company out of the $12,500 agreed to be paid by that company for labor, material and supplies furnished and used in drilling the well. The judgment against the Homa-Okla Oil Company in favor of the Comanche Drilling Company was erroneous.

It is argued that the representation made by the representatives of the Homa-Okla

Oil Company, at the time the workmen were considering discontinuing work, for nonpayment, that there was approximately $4,000 to be paid when the well had reached a depth of 3,000 feet, amounted to an agreement to pay that amount. It is sufficient to say that the suit is on the written contract, upon the theory that it was made for the benefit of those furnishing labor, material and supplies in sinking the well and not upon the oral agreement.

The judgment as against the Homa-Okla Oil Company is reversed for further proceedings, in accordance with the views expressed in this opinion.

By the Court: It is so ordered.

Note.—See under (1) 13 C. J. p. 546, §517; 6 R. C. L. pp. 852-854; 2 R. C. L. Supp. p. 227; 4 R. C. L. Supp. p. 446; 5 R. C. L. Supp. p. 373. (2) 13 C. J. pp. 705, §815; 709, §817; 27 Cyc. p. 745.