## R. T. STUART & CO. v. GRAHAM.

No. 16155—Opinion Filed Jan. 12, 1926.

Rehearing Denied April 6, 1926.

1. **Landlord and Tenant—Time of Rental Payments—Waiver of Punctuality.**

Where month after month the lessor has been receiving payment of the rent a few days later without objection, if he desires in the future to hold the lessee strictly to payment on the day the rent falls due, he must give him' notice to that effect; otherwise the lessee will not be in legal default from delaying the usual time.

2. **Contracts—Meaning of Terms Explained by Acts of Parties.**

Were the meaning of the terms used in a written contract is not clear, the subsequent acts of the parties showinng the construction they have put upon the agreement themselves are to be looked to by the court.

3. **Contracts—Time as of Essence—Express Provision Necessary.**

Although no particular form of expression is necessary, it must appear from the plainly expressed provisions contained in a contract, independent of all extraneous matter or circumstances, that it was the intention of the parties thereto that time should be of the essence thereof.

4. **Landlord and Tenant — Forfeiture of Lease for Nonpayment of Rent—Demand.**

Forfeitures are not favored in law, and a lease contract cannot be forfeited for nonpayment of rent, unless demand is made for the payment of the same.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Oklahoma County; George W. Clark, Judge.

Action by Roy A. Graham against R. T. Stuart & Company, a corporation. From judgment in favor of plaintiff, defendant brings error. Affirmed.

Rittenhouse & Rittenhouse, for plaintiff in error.

Twyford & Smith, for defendant in error.

Opinion by PINKHAM, C. This was an action brought by the defendant in error, Roy A. Graham, as plaintiff, against R. T. Stuart & Company, as defendant, to recover damages for the forfeiture of a certain lease to property located on West Grand avenue, Oklahoma City. The parties will be referred to as they appeared in the trial court.

The plaintiff claims to have sustained damages through the alleged wrongful act of the defendant in taking possession of the premises which had been leased to the plaintiff by said defendant and sublet by the plaintiff to the Leipold Grocery & Market Fixture House, said wrongful act having been taken by the defendant on the 3rd day of May, 1922, and before the expiration of the lease, and that by so doing the defendant deprived the plaintiff of the profits which he would otherwise have made upon the subleasing of said premises for the balance of the term covering the period from May 1, 1922, to December 31, 1923, of $75 per month, or a total sum covering that period of $1,500.

The defendant claims the right to exercise the option of declaring the lease contract at an end upon failure of the plaintiff to pay the agreed rental promptly on the 1st day of May, 1922, and alleges in his answer that on the last named date the plaintiff issued his check in the sum of $150, being the month's rent for said premises, and that the same was presented for payment of the rent for the month of May, 1922, and that payment was refused for the reason that there were not sufficient funds to the credit of the plaintiff in the bank on which his check was drawn, and that the defendant notified the plaintiff on May 3, 1922, that it elected to cancel the lease and that the defendant did thereupon re-enter and take possession of the property. These affirmative allegations of the defendant are denied by the plaintiff in his reply.

The terms of the lease in question contained the following:

"This lease made this 1st day of February, 1921. * * *

"Witnesseth, that said first party, in consideration of the covenants and agreements hereinafter set forth, does by these presents demise. lease, and let unto the second party the following described property situated in the county of Oklahoma, state of Oklahoma. to wit: ground floor room and basement in the building located on lot 20. block 6. Oklahoma City, * * * to have and to hold the same unto the second party from the 1st day of February, 1921, to the 31st day of December, 1923. and said second party. in consideration of the premises herein set forth. agree to pay to the first party as rental for the above described premises the sum of $150 per month, payable on the first of each month in advance."

The lease further provides that lessee is to have the privilege of subleasing subject to the approval of the lessor subject to the terms of this lease, and further provides: "We agree to the subleasing of space to the Leipold Grocery & Marketing House."

The cause was tried to a jury and resulted

in a verdict in favor of the plaintiff in the sum of $1,500. Defendant's motion for judgment, notwithstanding the verdict, and for a new trial, were overruled and exceptions allowed, and judgment was entered by the court in accordance with the verdict of the jury. The cause comes regularly on appeal to this court by petition in error and case-made attached.

The first proposition presented and discussed by defendant in its brief is that the defendant's demurrer to the petition and amended petition should be sustained for the reason that neither sets forth that the plaintiff complied with the terms of the lease. It is argued that the plaintiff did not claim to have complied with the terms of the lease and virtually admitted that because of the insufficient funds in the bank to meet the check given for the payment of the rent May 1, 1922, he was in default and cases are cited to the effect that the plaintiff must show that all those things which are on his part to be performed have been performed within the time specified in the contract. The Oklahoma case particularly relied upon is that of Howard v. Manning, 79 Okla. 165, 192 Pac. 358. The 13th paragraph of the syllabus in the Howard Case, supra, reads as follows:

"The breach of the lessee's covenant, for which a forfeiture is provided, makes the lease voidable, not at the election of the lessee, but only at the election of the lessor, and any act on the part of the lessor, by word or deed, with knowledge of what has been done, which signifies his intention to affirm the lease, is conclusive evidence of a waiver of the forfeiture."

Plaintiff alleges in one of the paragraphs of his petition that:

"Plaintiff further states that on or about the first day of February, 1921, the plaintiff went into possession of the above described premises, and that defendant herein did not require him at any time to make his payments for rent promptly as set forth in the lease. Plaintiff states that some of these monthly payments were made on the first day of the month and in some instances as late as the 9th day of the month; that defendant never complained that payments were not made promptly; that in some instances plaintiff paid the monthly rent by means of checks, and that in some instances said checks were returned by the bank on which they were drawn because of insufficient funds, and that defendant would immediately notify plaintiff and plaintiff would pay the rent in cash. That by defendant's course of conduct as aforesaid, he led plaintiff to believe that prompt payments would not be insisted upon, and that it was not necessary

to make the payments strictly in accordance with the terms of the lease."

In the case of Standard Brewing Co. v. Anderson, 121 La. 935, 15 Ann. Cas. 251, it is said in the syllabus:

"Where month after month the lessor has been receiving payment of the rent a few days later, without objection, if he desires in the future to hold the lessee strictly to payment on the day the rent falls due, he must give him notice to that effect; otherwise, the lessee will not be in legal default from delaying the usual time."

In a note to the above case, found in 15 Ann. Cas. 253, it is said:

"The holding of the reported case to the effect that a forfeiture of a lease for nonpayment of rent on the day it is due will not be permitted, where the lessor by his course of dealing with the tenant has led the latter to believe that a delay in payment is immaterial and has given the tenant no notice of his intention to require the rent to be paid punctually, is in accord with the settled law on the subject. The rule is based upon the ground that the lessor should not be permitted to use a provision intended for his benefit as a means of entrapping the tenant."

In the light of these authorities we think the petition states a good cause of action, and that defendant"s demurrer was properly overruled.

It is next contended:

"That the lease, in fixing the time and the amount of rent to be paid on the '1st day of each month in advance,' gave to the lessor the right and option on the failure to make any such payment or payments as they each became due to cancel the lease, and take possession of the premises."

The lease in question, as shown by the record, did not provide for payment on the 1st day of the month, but that the payments were to be made on the "first of the month" under the contract. The evidence discloses that the payments were actually made at various times between the 1st day and the 9th day of the month. The record shows that the payment was always made and received after the 1st day of the month and on or before the 9th day of the month. Whether the language of the lease, "First of the month," means the first part or portion of the month, as contended by plaintiff, or whether it is to be construed to mean the "first day of the month," as contended by the defendant, it is clear from the record that the plaintiff paid and the defendant received the rents between the 1st day and the 9th day of each month down to the month of May, 1922. It appears that on

tne 1st day of May, 1922, the plaintiff drew a check for the month's rent of $150, which was not paid for want of sufficient funds, and on the 3rd day of May, 1922, the defendant declared the lease ended and determined and so notified the plaintiff. On the 5th day of May, 1922, the plaintiff procured the cash in the sum of $150 and tendered it to the defendant at its place of business, which money was refused.

"Where the meaning of the terms used in a written contract is not clear, the subsequent acts of the parties showing the construction they have put upon the agreement themselves are to be looked to by the court." Rider v. Morgan, 31 Okla. 98, 119 Pac. 958.

It is further contended that the court was in error in giving the 5th instruction to the jury where the following language was used:

"* * * But as the time when the payments should be made under the contract was not made of the essence of the contract a failure to pay the rent promptly on the first day of May, 1922. would not itself entitle the defendant to declare a forfeiture without first giving notice to the plaintiff of its intention so to do."

Section 5061, C. S. 1921, provides that:

"Time is never considered as of the essence of a contract, unless by its terms expressly so provided."

In Drumright v. Brown, 76 Okla. 162. 184 Pac. 110. it is said, with reference to sec. 5061, supra:

"Although no particular form of expression is necessary, it must appear from the plainly expressed provisions contained in a contract, independent of all extraneous matter or circumstances, that it was the intention of the parties thereto that time should be of the essence thereof."

It is further contended:

"That on the evidence in this case the trial judge should have given judgment or directed a verdict for the defendant (plaintiff in error) in compliance with his motion; as the claim for damages based on the loss of profits as in this case is not a good or sufficient ground or cause of action to maintain this suit."

This proposition cannot be sustained. The lease provided that the lessor might sublet the premises to Leipold Grocery & Market Fixture House, which was accordingly done. Plaintiff's sublease to the Leipold Grocery & Market Fixture House was on the same form as the lease held by the plaintiff and for substantially the same length of time at a monthly rental of $225 per month. which was paid to the plaintiff by Leipold until May, 1922. The record discloses that on the morning of May 3, 1922, the defendant, Stuart, called Mr. Leipold on the telephone and requested him to come to his, the defendant's office, which he did, when the defendant agreed to lease the premises, less the basement, to Leipold for $200. This was accepted by Leipold and a written lease drawn, signed and delivered. The lease was dated May 3, 1922. but took effect on May 1st, prior thereto. The result of this transaction was that the defendant received $50 per month more than it had been receiving from the plaintiff, and Leipold was paying $25 a month less than he had been paying the plaintiff. No notice of this transaction had been given to the plaintiff, and so far as we are able to discover from a careful examination of the record. no notice of anything was given to the plaintiff, Graham, until after the transaction was closed by the defendant, Stuart, with Leipold.

We are unable to find from the record that the defendant made any demand for the rent for the month of May, 1922.

"Forfeitures are not favored in law, and a lease cannot be forfeited for nonpayment of rent, unless demand is made for the payment of same." Welch v. Church, 55 Okla. 600, 155 Pac. 620.

In 16 R. C. L. 1127, it is said:

"It is the general rule, at common law, that a demand for payment must be made to entitle a landlord to enforce a forfeiture for its nonpayment under a power to reenter or declare a forfeiture for such cause."

Defendant cites the case of Ft. Orange Barbering Co. v. New Haven Hotel Co. (Conn.) 101 Atl. 505. It appears that the lease in that case provided that no demand for rent and no re-entry for condition broken as at common law shall be necessary to enable the lessor to recover possession.

It is true the lease in question in the instant case waived notice of the landlord's intention to terminate the lease and re-enter the premises, but there was no waiver of the demand for rent. As before stated. the record fails to show that a demand for rent for the month of May was at any time made, although it appears that the plaintiff was ready and willing to pay the same on May 5, 1922.

The case of Darvirris v. Boston Safe Deposit & Trust Co. (Mass.) 126 N. E. 382. is also cited by defendant. It is said in that case:

"The plaintiff had generally been slow in the payment of rent and had been warned

by the landlord's agent that unless he paid more promptly he would have to vacate the premises. At the time of the entry, the rent for two months was in arrears."

The case cited is not applicable to the admitted facts in the case at bar.

In Gordon v. Richardson, 185 Mass. 492, 70 N. E. 1027, the rule is announced that:

"The ground on which a tenant gets relief in equity from the forfeiture of his estate for a failure to pay rent is that in equity the landlord's right of re-entry is given as security for the payment of the rent, and on the rent being paid the very thing is done for which the security was given."

In the instant case the defendant had received his rent from the beginning every month, not later than the 9th day of the month, until the month of May, and was tendered the rent for that month on May 5th. We cannot escape the conclusion from the record that the principal reason for attempting to cancel the plaintiff's lease was that the defendant desired to receive the increased rental from the property rather than because the plaintiff did not pay his rent promptly on the 1st day of each month. Counsel for defendant stress their proposition that the lease contract in question plainly fixes the first day of each month as the time of payment of the rent, and that failure to make the May rental payment on the first day of that month authorized the defendant to cancel the lease and release the premises to the plaintiff's tenant. Assuming, without conceding, that the language "first of the month," as used in the lease, is synonymous with "first day of the month," and that failure to pay the rent on the day it is due puts an end to the lease, which is the strictly technical ground upon which defendant relies, still, such rule cannot have application in a case like this, where the lessor has accepted the rent month after month a few days later than the first day of the month, and thereby led the plaintiff to believe that such practice would not subject the lease to cancellation.

It is finally urged that various instructions of the court given to the jury were contrary to law and misleading. The court's instructions have been carefully examined, and it is sufficient to say that we deem them applicable to the issues involved in this case.

We think the judgment of the trial court should be affirmed.

Defendant in error in this case has asked for a judgment against the sureties on the supersedeas bond filed herein in the event the judgment of the trial court should be affirmed, it appearing that judgment herein was superseded by a bond on which A. L. Welch and R. W. Reece were sureties. Judgment is therefore rendered against the said sureties on the supersedeas bond.

By the Court: It is so ordered.

Note.—See under (1) 36 C. J. p. 363 § 1202. (2) 13 C. J. p. 546 § 517. (3) 13 C. J. p. 687 § 783. (4) 35 C. J. p. 1073 § 245.