## EASON et al. v. ROSAMOND et al.

No. 24303.    May 14, 1935.

Rehearing Denied June 18, 1935.

Simons, McKnight, Simons, Mitchell & McKnight, for plaintiffs in error.

Park Wyatt and Byron Lamun, for defendants in error.

PER CURIAM. The parties occupy the same relative positions in this court as in the trial court, and will therefore be referred to as plaintiffs and defendants. Plaintiffs, T. T. Eason and the Oil State Petroleum Company, filed two separate suits in the district court of Pottawatomie county against Louie F. Rosamond and Lillie E. Rosamond, praying for money judgment based on the following state of facts:

The defendants Rosamond were the owners of a certain 40 acres of land in Pottawatomie county, Okla. On January 2, 1926, they conveyed this tract of land to J. M. McGee, and on the same day McGee deeded back to them an undivided one-half interest in the mineral rights. McGee was also the owner of an adjoining 40 acres, and on June 7, 1926, McGee and wife and Rosamond and wife executed a joint oil and gas lease on this 80-acre tract to one J. H. Lewis. Lewis later assigned this oil and gas lease to the Indian Territory Illuminating Oil Company, who developed the lease by drilling one or

more wells on the Rosamond 40 acres of this 80-acre tract. Subsequent to the execution of this oil and gas lease, and in November, 1926, Rosamond and wife executed two mineral deeds to their royalty in this 40-acre tract, one to T. T. Eason, and the other to the Oil State Petroleum Company, each deed being for a five-acre interest and the two deeds being identical as to the interest conveyed.

There was no direct contact between the sellers and buyers of these two royalty interests. The negotiations were carried on by a broker. The broker contacted the owners, and, after securing a verbal option on the respective royalty interests, submitted the proposition by telephone to the purchasers, and after a tentative acceptance on their part the broker caused the mineral deeds to be executed and procured abstracts of title, and the sellers then attached the mineral deeds and abstracts to sight drafts and mailed them to a bank at Enid, with the privilege of inspection of the deeds and an examination of the abstracts. These deeds and abstracts were examined by the purchasers, the plaintiffs in this case, found satisfactory, and the sight drafts were honored and paid, and after oil was discovered on the Rosamond tract the controversy arose over the proper distribution of the royalty under the oil and gas lease.

In order for a correct understanding of the question involved in the trial court, and to be determined by this court, it is necessary to set out pertinent portions of the oil and gas lease made by McGee and Rosamond on this 80-acre tract, as well as pertinent portions of the mineral deeds made by Rosamond and wife to Eason and the Oil State Petroleum Company. The oil and gas lease contained the following clause:

"10. If the leased premises shall hereafter be owned in severalty or in separate tracts, the premises, nevertheless, shall be developed and operated as one lease and all royalties, accruing hereunder shall be treated as an entirety and shall be divided among and paid to such separate owners in the proportion that the acreage owned by each such separate owner bears to the entire leased acreage. * * *"

The granting part of the mineral deed reads:

"Have granted, sold, conveyed, assigned and delivered, and by these presents do grant, sell, convey, assign and deliver unto said grantee an undivided one eighth (1/8th) interest in and to all of the oil, gas, and other minerals in and under, and that may

be produced from the following described land situated in Pottawatomie county, state of Oklahoma, to wit:

"The northeast quarter (N. E. ¼) of the northwest quarter (N. W. ¼) of section twenty-six (26) township seven (7) north, range four (4) east.

"(It is the intention of the grantors to convey an undivided five acre interest in the oil, gas and other minerals in and under and that may be produced from the above described lands).

"Of section 26, township 7 N. range 4 E., containing 40 acres more or less, together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil, gas and other minerals removing the same therefrom.

"Said land being now under an oil and gas lease executed in favor of any valid oil and gas lease of record * * *, it is understood and agreed that this sale is made subject to the terms of such lease, but covers and includes ⅛th of all of the oil royalty, and gas rental or royalty due to be paid under the terms of said lease in so far as it covers the lands described."

It was the contention of the plaintiffs that they should each receive an undivided one-eighth interest of all of the royalties from the 40 acre tract described in their respective mineral deeds. The defendants contended that under the terms of the oil and gas lease covering the 80-acre tract, the plaintiffs should each receive an eighth of the royalty on the 80-acre tract, rather than one-eighth of the 40; that is, that each purchaser of this royalty bought a 5/80th thereof from the leased 80 acres, rather than a 5/40th confined to the Rosamond 40. This was the view taken by the lessee, and it paid the royalty to the respective parties on that basis. The plaintiffs conceded that the lease was so justified, under the terms of the lease, but not as between the parties.

The plaintiffs thereupon brought the two suits to recover one-half of the royalty thus paid to the Rosamonds. The suits were consolidated for trial.

The trial court sustained the contention of the defendants and rendered judgment in their favor, and the plaintiffs appeal.

The sole question for determination by this court is whether or not the trial court properly construed the lease and mineral deeds and rendered a correct judgment. Certain oral evidence was introduced in the trial of the case, but none that tended to impeach the terms of the oil and gas lease or the mineral deeds. Therefore, the

rights of the respective parties must be determined by the terms of the oil and gas lease, and the mineral deeds.

A correct decision requires a proper construction of the above-quoted paragraph 10 of this oil and gas lease in connection with the above-quoted portion of the mineral deeds.

Apparently, the trial court followed the holding of this court in the case of Gypsy Oil Co. v. Schonwald et al., 107 Okla. 253, 231 P. 864, which involved an almost identical state of facts, and construed an oil and gas lease containing the same provision as section 10 of the present lease, and a mineral deed almost identical with the ones now considered. The lessor executed a mineral deed purporting to convey a one-fourth interest in the grantor's right to oil and gas, and other minerals in and under the west half of the 160-acre tract, and this mineral deed, after the granting clause, recited the following:

" 'Said land being now under an oil and gas lease, executed in favor of the Gypsy Oil Co. It is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes one-fourth of all the oil royalty and gas rental or royalty due and to be paid under the terms of said lease'."

The lessee construed that Schonwald, the grantee in the mineral deed, was entitled to have his royalty interest spread over the 160 acres, while the grantee claimed that he should have one-fourth of all the royalty under the 80 acres described in the mineral deed. This court rejected that contention and held that the lease was bound by the provision of the lease, saying:

"* * * Even if the so-called mineral deed should be reformed for any grounds so as to show a conveyance to Schonwald of a fractional part of the royalty on the west 80 only, such attempt on the part of Clark would not be availing, if in fact the said prorata clause of said lease is a valid burden imposed upon the interest in the property retained by Clark after the execution of the lease. If said clause is a valid clause, Clark in executing the lease placed a restriction upon his power to alienate any part of his estate in the land covered by the lease, with the right on the part of the subsequent grantee of such fractional interest to participate in the royalty, except in accordance with the said lease provision itself. * * * If the mineral deed be not reformed, it shows on its face that it is made subject to all the terms and provisions of the lease, and its very provisions constitute a ratification by the lessor of the terms of the lease and an acceptance of its terms by Schonwald."

It was contended in the Schonwald Case, and is contended by the plaintiffs in the case at bar, that the case of Kimbley v. Luckey, 72 Okla. 217, 179 P. 928, and the case of Galt v. Metscher, 103 Okla. 271, 229 P. 522, are controlling in determining their rights under the oil and gas leases and mineral deeds, but the court rejected this contention, and said:

"Kimbley v. Luckey, 72 Okla. 217, 179 P. 928, involved the rights of a subsequent purchaser of a fraction of the tract covered by an oil lease, not containing a clause such as now here. It was there held adversely to the contention that the owner of the fee in the fraction had any interest in royalty produced from wells not on the fraction. Again, the same was held on the same contention in Pierce Oil Corporation v. Schacht et al., 75 Okla. 101, 181 P. 731. Each of these cases adjudged that the subsequently acquired title-holder to a part of the leased area should receive none of the benefits arising from the lease unless the well was located on his tract.

"These cases, and those from other courts cited, leave us not unmindful that the nature of oil and gas is such that a well may be actually located upon the portion not sold by the lessor, but so near the line of a subsequent grantee of part of the realty that a large per cent. of the production comes from that owned by the subsequent purchaser. This well-known fact makes such a condition exceedingly unequitable in numerous cases. Only recently this court adjudged in Galt v. Metscher, 103 Okla. 271, 229 P. 522, that the lessee had a right to develop the land as a unit, and the purchaser of the royalty on the south 80 of a 160-acre tract had no interest in a well drilled just 4 feet from the dividing line, though much oil came from the south 80. This in reality is taking that which belongs to the south 80 'within the law'. The lessee was under no legal obligation to drill an offset, but in fact has the right to drill wells along and near the line of the subsequent purchaser's part, and thereby in many cases take practically, if indeed not all, the oil from the subsequent purchaser's tract without the owner receiving any part thereof. This court in the last-named case said in effect that the protective remedy is by contract made between the parties at interest."

In the Schonwald Case we considered the unity of the oil and gas lease, and said:

"In the instant case the lessor-owner of the entire 160 acres executed the lease on it as an entirety. That he had the right to place therein any provision which he deemed either to his advantage or to the

advantage of a subsequent purchaser of a fractional interest in the land or the mineral estate therein seems clear an an incident to his ownership. He had the right to limit his sale thereof or manner of the use thereof as to its entirety or any acreage within the whole, or any estate arising from any part thereof. What he did in fact was in the nature of a covenant which burdened his remainder to the extent that one purchasing subsequent to said lease contract, and subject to it, acquired an interest in the royalty on the whole acreage, prorated as the fraction thereof purchased bore to the entire tract. We think it is well recognized that the whole estate in the mineral may be, as to sale thereof, separated from the other estates of the fee. When so done, interests therein are subject to contract. The clause here in question was, as to subsequent agreements of sale, tantamount to a severance of the owner's estate in the oil and gas mineral from the estate in the land itself, and covenanting that owners of a fraction of the whole estate in either should share in the oil and gas as per the pro rata clause thereof. If the purchaser succeeds by contract to the west 80 or a fraction thereof as to fee or mineral right, he takes same burdened with that agreement in the lease, and as the contract affects the mineral rights, it goes to all underneath the acreage covered by the lease."

The holding of this court in the Schonwald Case was largely one of first impression in the construction of the lease and mineral deed, without much, if any, precedent to aid the court, but the decision has been followed with approval by the courts of other states.

In the case of Schrader et al. v. Gypsy Oil Co., et al., 28 P. (2d) 885, the Supreme Court of New Mexico considered an almost identical state of facts. In that case there were three noncontiguous tracts of land owned by the lessor, leased to the Gypsy Oil Company. The lease contained paragraph 10, as is in the Schonwald and in the present lease. After the oil lease was made, the lessor executed numerous conveyances of mineral rights, and, just as in the case at bar, a controversy arose as to the proper division of the oil royalties. The court said:

"So we approach section 10, not as a covenant or stipulation between the lessor and lessee which may unfortunately defeat the intent of the grantor and his grantees, but as a complement of the royalty provision of the deed; a stipulation of the deed embodied by reference.

"We find:

" 'If the leased premises shall hereafter be owned in severalty or in separate tracts, the premises, nevertheless, shall be developed and operated as one lease and all royalties accruing hereunder shall be treated as an entirety and shall be divided among and paid to such royalty owners in the proportion that the acreage owned by each such separate owner bears to the entire leased acreage.'

"Considering this a provision of the deed rather than of the lease, and considering the controversy as between rival claimants under the deeds rather than as between parties to the lease, we have no doubt as to its meaning. An extended analysis would scarcely make it plainer.

"It may be that this form of expression was originally drafted for use in leasing a single tract; that it contemplates the future contingency of a divided ownership of that single tract; that, in this case of noncontiguous tracts, the transfers have brought about no more of an ownership 'in severalty or in separate tracts' than already existed; that all substantial interests of the lessee are expressed in and protected by the provision following as to offset wells and tankage; that the lessor's power of alienation is somewhat restricted, even so unreasonably and unnecessarily as to raise a doubt of the validity of the stipulation, considered as a provision of the lease.

"If in fact the deeds had plainly conveyed a specified fractional interest in the royalty from oil produced upon the described tract, we might be called upon to consult the canons of construction invoked by appellees; 'that full force and effect be given to all words used in the sentence; that there be served the purpose intended by the parties thereto; that the contract do no injustice but be such as a sane and sensible lessor might be reasonably expected to naturally execute; that the covenant be construed so as to make it legal and not invalid; that the contract be given that meaning which clearly appears from its associated sentence immediately following, observing the rule that the same must be most strongly construed against the party who prepared it and against the party appearing therein as lessee.' In that case, as we have said, we should feel called upon seriously to consider the contention that the first sentence of section 10 should be made by construction to read as follows:

" 'If' (any one of) 'the leased premises shall hereafter be owned in severalty or in separate tracts the' (same) 'nevertheless, shall be developed and operated as one lease and all royalties accruing hereunder shall be treated as an entirety and shall be divided among and paid to such separate owners in the proportion that the acreage owned by each such separate owners bears to the entire leased acreage' (therein).

"But, considering the strained construc-

tion of the deeds to which appellees must resort, and considering the first sentence of section 10 merely as completing the royalty provision of the deed, and that the reasonably plain language of section 10 is entirely consistent with the preferable meaning of the deed, we feel constrained to reject appellee's contention.

"We have, we believe, a complete and effective provision or scheme for unit development and production on a small scale. In it the lessor seems to have acquiesced and into it his grantees seem to have injected themselves. It might perhaps have been more nicely and exactly expressed, in view of the noncontiguity of the three tracts and their single ownership. But we do not think it could have been misunderstood. Reading deeds and lease together, we think the meaning is as contended by appellants and that the interpretation urged by appellees is inadmissible."

In the case of Hoffman et al. v. Magnolia Petroleum Co. et al., 273 S. W. 828, the Commission of Appeals of the Supreme Court of Texas determined the almost identical question. The plaintiff in that case brought suit for the recovery of royalties under an oil lease on a half section of land, basing his right of action on a deed from lessors to himself. The petition alleged that the lease was an ordinary form and covered 320 acres of land. The deed under which plaintiff claimed was executed some nine months after the lease, and granted one-half interest in and to all of the oil, gas and other minerals in and under and that may be produced from a certain 90 acres (out of the 320). This deed contained the further provisions:

"Said above-described lands being now under an oil and gas lease originally executed in favor of R. O. Harvey and now held by _____. It is understood and agreed that this sale is made subject to said lease but covers and includes one-half of all the oil royalty and gas rentals or royalty due to be paid under the terms of said lease. It is agreed and understood that one-half of the money rental which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said Peter L. Hoffman and in the event that the said above-described lease for any reason becomes canceled or forfeited, then and in that event the lease interest and all further rentals on said land for gas and mineral privileges shall be owned jointly by Jas. N. Duke and wife and _____ Hoffman, each owning one-half interest in all oil, gas and other minerals in and upon said land, together with one-half interest in all future rents. * * *

"The plaintiff contends that the conveyance to him of 'one-half of the oil royalty * * * due to be paid under the terms of said lease' is not confined to wells upon the smaller tract. The defendants reply that, since the smaller tract is the subject-matter of the deed, the quoted language should be construed as having reference to it alone, and that any other interpretation would be unreasonable.

"Before deciding the question, the court would call to mind that, if the deed is capable of the meaning contended for by plaintiff, there would be nothing unreasonable in holding under the circumstances alleged that, for so substantial a cash consideration, the lessors, having previously conveyed to lessee all of the oil, gas, and minerals under the whole half section, and retained the surface for their own consistent uses, consented to part, not only with their possibility of a reverter in the oil, etc., of the 90 acres, but also with a full one-half of their right to royalties under the lease as an entirety, especially in view of the fact that the reverter was uncertain and the control over the placing of wells impossible. They may not have done that; but it would not have been wrong or inane upon its face if they had. Gypsy Oil Co. v. Schonwald, 107 Okla. 253, 231 P. 864. And then again it could have been reasonable from their standpoint, and not unreasonable from that of grantee, if they had restricted their assignment of royalties to those from wells on the 90.

"There are a number of rules of construction that will be noticed.

"This deed, if its intention be ambiguous, is to be construed against grantors rather than against grantee; and yet, if what it purports to convey is distinctly pointed out in a manner and under circumstances showing that royalty as to wells located outside of the 90 acres was not in contemplation, although the contrary could be construed as within other language when considered separately, the specific and restricted intent would control. Regan v. Hatch, 91 Tex. 616, 45 S. W. 616. But the instrument must, if possible, be considered and made to speak consistently, as a whole, without the rejection of any words, and so as to declare the evident intention of the parties, and the latter is the principal rule to apply. Cartwright v. Trueblood, 90 Tex. 535, 39 S. W. 930; Regan v. Hatch, 91 Tex. 616, 45 S. W. 616; Cullers v. Platt, 81 Tex. 258, 16 S. W. 1003.

"The deed, in the first part, conveys an undivided one-half interest in the possibility of a reverter of the oil in place under the 90 acres. Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566; Humphreys, etc., Co. v. Gammon, 113 Tex. 247, 254 S. W. 296, 29 A. L. R. 607. For, 'subject' to the lease,

the one-half interest in the oil under that particular tract is conveyed to Hoffman. In the last part of the instrument it is provided that, if the lease shall be forfeited or canceled, the grantor and grantee shall share equally in all mineral interests and rights in 'said land'; that is, the 90 acres. Gas and other minerals take the same course, but are not here involved.

"Those passages have regard to minerals, the title to which has passed to the lessee, but which may revert to lessor and his assigns if the lease should terminate. But they are not the sole subject-matter of the conveyance. There follow other words regarding not the reverter but rents and royalties prior to the time the lease terminates, and, while it is still in force, both before any well at all is drilled and after the drilling of a productive well.

"The deed, after conveying the interest in oil, gas, and minerals, and referring, as the description and the allegations show, to the particular 'lease' now under consideration, reads:

" 'It is understood and agreed that this sale is made subject to said lease, but covers and includes one-half of all the oil royalty and gas rental or royalty due to be paid under the terms of said lease. It is agreed and understood that one-half of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to said Peter L. Hoffman. * * *'

"This is plainly a statement that the deed conveys a one-half interest in the royalty to accrue under the terms of the lease as an entirety; that is, the lease upon the whole half section.

"Instead of restricting these royalties to wells on the 90 acres, the conveyance covers one-half of 'all' the oil royalty under the terms of the lease. That this passage refers to an interest in the whole instead of a part of the royalty, irrespective of where the wells shall be located, is corroborated by the provisions for one-half of the delay rentals payable under the lease. These, by the provisions of the latter instrument, are to accrue before any well at all is begun, and the conveyance of them can only refer to the lease as a whole, and hence not to a particular 90 acres of it; thus showing that in this connection a segregated 90-acre tract is not intended to be the measure of the rights granted.

"The Court of Civil Appeals correctly decided that, under this lease, a subdivision of the lands would not affect the rights and obligations of the lessee—that the purchaser occupies no better position than his vendor does. As to the lessee the lease remained an entirety, as did his duty to pay rents and royalties. The deed said the 90 acres

was subject to the lease. It was. But a conveyance of a part of the land did not subdivide the lease and turn it into two leases, one upon the 90 and the other upon the remaining 320. There was therefore no lease covering solely 90 acres, and, when the deed refers to the 'lease,' it can only refer to the lease on the whole 320 acres. Murray v. Barnhart, 117 La. 1023, 42 So. 489; Galt v. Metscher, 103 Okla. 271, 229 P. 522; Gypsy Oil Co. v. Cover, 78 Okla. 158, 189 P. 540, 11 A. L. R. 129; McCallister v. Texas Co. (Tex. Civ. App.) 223 S. W. 859.

"The words of the two instruments show this meaning, and it is one that may reasonably be viewed as the real intention of the parties."

In the case of Clark et al. v. Elsinore Oil Co., 31 P. (2d) 476, the District Court of Appeals of California had before it the contention of certain lessors as to the division of oil royalty. The plaintiffs and the defendants owned separately two adjoining 40-acre tracts of land, and joined in the execution of a lease on the two tracts. The lease contained the following provisions:

" 'It is understood and agreed that all of the lessors herein shall participate in the bonuses, rentals and royalties covering all of the demised premises in the proportion that their respective interests shall bear to the whole of said demised premises.' The second provision expressly authorized the lessee at any time during the term of the lease to surrender and turn back to the lessors all or any part of the leased property and was in the following language:

" 'The lessee may at any time quitclaim to the lessors this lease in its entirety or as to part of the acreage covered hereby and thereupon lessee shall be released from all further obligations as to the part of the land so quitclaimed and all rentals and drilling obligations shall be reduced prorata according to the acreage quitclaimed. * * *'

Later, the lessee drilled a well on one of the separate forties and produced oil in paying quantities, and thereafter, under the terms of the lease, executed a release of all this 80-acre tract, except ten acres surrounding the well which had been drilled. The litigation in the case was over the division of the royalties as between the lessors of the ten-acre tract of land where the well was drilled, and the lessors of the separate 40-acre tract which had been released by the oil company. The lessors of the 40-acre tract on which the well was drilled contended that they were entitled to the entire royalty. The lessors of the other 40-acre tract contended that under the terms of the joint

lease, they were entitled to share equally in the royalties, regardless of the location of the well. The lease did not contain paragraph 10 above referred to, but was an ordinary oil and gas lease. Notwithstanding this, the court held that all the parties to the lease were entitled to share alike in the royalty. Briefly the court said:

"Provision in contract for joint lease of adjoining tracts, that oil royalties should be equally divided between respective owners held not surplusage, but important as indicating intention to divide profits from all producing wells on either tract between such owners equally, thus warranting presumption of intent to continue such division after lessee surrendered one tract.

"Absence of provision in agreement for joint lease of adjoining tracts that respective owners should continue to share oil royalties equally, notwithstanding lessee's surrender of one tract, held not to require inference of intent to discontinue such equal division in that event."

We, therefore, hold that the contention of the plaintiffs below, plaintiffs in error here, is without merit.

There is another reason why the judgment of the trial court was right and should be affirmed. After the controversy arose between the parties over the proper division of the royalty, but sometime during the year 1929, the plaintiff prepared and submitted to the defendants a stipulation describing the lands embraced in the oil and gas lease, and setting forth that part of paragraph 10 quoted, and setting forth that there was a producing well on the east 40 acres of the 80-acre lease, and setting forth that, notwithstanding the above-quoted provision of the lease, the royalty be paid to the parties in the proportion indicated, so far as it related to the 40 acres upon which the producing well was located, one-half to J. M. McGee, one-fourth to the Rosamonds, and one-eighth to Oil State Petroleum Company, and one-eighth to T. T. Eason. The stipulation submitted then provides that if production is encountered on the other 40-acre tract, then the agreement shall be null and void, and, thereafter, the royalty on the entire production obtained from the 80 acres covered by the oil lease shall be paid to the interested parties in the proportion set forth, and it then sets forth one-eighth royalty to the Rosamonds, and one-sixteenth each to the Oil State Petroleum Company and T. T. Eason. This stipulation, in brief, sought to induce the Rosamonds to agree that so long as oil was produced only from

the 40-acre tract in which they had an interest, the plaintiffs should each have a one-eighth interest therein, but that if oil was produced on the entire 80-acre tract, their interest should then spread over the entire leased premises. This position, as set forth in the stipulation, is inconsistent with the contention that under the mineral deed the grantee plaintiffs were entitled to a one-eighth each of the royalty under the 40 acres, under the terms of their mineral deeds.

They will hardly be permitted to thus place a practical construction upon the terms of the lease, and be heard to say in the trial court, and here, that the legal construction was different, in view of the dependent terms of the mineral deeds upon the terms and conditions of the oil and gas lease.

Where the meaning of the terms used in a written contract is not clear, the subsequent acts of the parties showing the construction they have put upon the agreement themselves are to be looked to by the court. Rider v. Morgan, 31 Okla. 98, 119 P. 958; Stuart & Co. v. Graham, 117 Okla. 117, 245 P. 608.

Subsequent conduct of parties to a contract may be considered in arriving at their intentions. Gladys Belle Oil Co. v. Clark, 147 Okla. 211, 296 P. 461; Homa Okla. Oil Co. v. Parsons, 115 Okla. 1, 240 P. 1063.

Where a contract is ambiguous the court may look to the construction which the parties have placed upon it in order to ascertain its true meaning. Minnetonka Oil Co. v. Cleveland Vitrified Brick Co., 27 Okla. 180, 111 P. 326.

It follows that the judgment of the trial court was correct, and it is affirmed.

The Supreme Court acknowledges the aid of Attorneys J. I. Howard, M. L. Holcomb, and R. A. Barney in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Howard and approved by Mr. Holcomb and Mr. Barney, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., and BAYLESS, BUSBY, PHELPS, and GIBSON, JJ., concur.