## HARE MINING & MILLING CO. v. KEYS et al.

No. 16951—Opinion Filed Sept. 14, 1926.

Rehearing Denied Dec. 14, 1926.

**1. Judgment—Res Judicata—Matters Which Might Have Been Presented in Former Action Between Same Parties.**

When the second suit is between the same

parties or their privies, and upon the same cause of action as a prior suit, the judgment in the first suit is an adjudication, not only as to every question, issue, and fact which was presented, but also upon those which might have been presented, in the first suit.

## 2. Election of Remedies—Effect.

When one has two remedies proceeding upon opposite and irreconcilable claims of right, the one adopted excludes the other.

(Syllabus by Pinkham, C.)

Commissioners' Opinion. Division No. 5.

Error from District Court, Ottawa County; J. J. Smith, Judge.

Action by Hare Mining & Milling Company against J. W. Keys and others for damages alleged to have been sustained by breach of contract for the sale of a mining lease. Judgment for defendants, and plaintiff brings error. Affirmed.

J. G. Austin, for plaintiff in error.

Geo. T. Webster, E. C. Fitzgerald, and Dick Rice, for defendants in error.

Opinion by PINKHAM, C. The plaintiff in error, the Hare Mining & Milling Company, a corporation, on the 22nd day of May. 1919, entered into a certain written contract with J. W. Keys, V. V. Grant, J. K. Moore, and S. Walker, defendants in error, to convey to them for the sum of $100,000 a certain zinc mining lease, concentrating plant and equipment, located in Ottawa county.

The defendants in error paid to the plaintiff in error at the time of the execution of the contract $15,000, and were permitted to enter into possession of said lease and to operate the mill and machinery thereon, rendering to plaintiff in error certain agreed royalties, and were to have the option to purchase within six months for an additional $85.000 to be paid at stated times, with interest. There was paid plaintiff in error on the purchase price of said property from time to time $71,829.95. Upon the defendants in error's default in the balance called for by the contract, the plaintiff in error instituted this aciton against the defendants in error, asking for judgment against them jointly and severally for the sum of $17,-643.50, with interest, claiming the said sum to be due under the said contract.

The parties will be referred to as plaintiff and defendant, as they appeared in the trial court.

The defendants in their answer denied generally the allegations of plaintiff's amended petition; admitted the execution and delivery of certain contracts attached thereto; and that there was default on their part in the payment of the purchase price; and admitted the right of plaintiff to forfeit and cancel the contract and re-enter and take possession of the premises as provided by the terms of the contract; but alleged that the rights of both plaintiff and defendants were fully adjudicated in another action, No. 4229, in the lower court, entitled W. S. O'Bannon v. Niangua Mining & Royalty Company. Defendants further alleged that the plaintiff, acting by its attorney, in open court in the trial of cause No. 4229, waived whatever right, if any, it had, to a personal judgment against the defendants. Plaintiff's reply consisted of a general denial.

The cause was tried to the court without the intervention of a jury, and at the close of all the evidence the court made findings of fact and concluded as a matter of law that the plaintiff was entitled to no relief in the instant action, and judgment was entered against the plaintiff and in favor of the defendants. To all of the findings of fact and conclusions of law and to the judgment entered the plaintiff excepted. Plaintiff's motion for a new trial was overruled, exception taken, and plaintiff has duly appealed to this court by petition in error and case-made attached for review.

The principal proposition presented and discussed by plaintiff is that the court's conclusion of law, to the effect that by reason of the evidence adduced on the trial and from the facts found by the court the plaintiff was estopped and barred from recovering in this action, is clearly erroneous, and that the case should be remanded with instructions to enter a judgment for plaintiff and against defendants for the amount claimed. It becomes therefore necessary to briefly review the material facts, concerning which there is little, if any, dispute.

The contract of May 22, 1919, under which defendants took possession of the lease in question, was in substance an option contract giving to defendants the right to purchase from the plaintiff a certain mining lease and mill upon the land in said contract described. A copy of this contract was attached to plaintiff's amended petition. This contract provides, among other things:

"It is further agreed between the parties hereto that in case the said second parties (defendants herein) shall elect to purchase the rights of the first party (plaintiff herein) in and to said mining lease within the said period of six months, but shall fail to make the payments hereinbefore provided at the time and in the manner specified, with inter-

est thereon, that such failure shall give the first party the right to declare this agreement at an end and to at once reenter upon said lands and take possession of said lease and mill and mining properties and appliances; all sums theretofore paid, if any, as part of the purchase price for said lease being kept and retained by said first party or its assigns, and neither party shall be further bound under this agreement."

By another clause of the contract of May 22, 1919, it was provided:

"That the rights granted by first party (Hare Mining & Milling Company) to the second parties herein (defendants herein) during the said six months' period shall not be assignable without the written consent of the first party; but that if said second parties shall elect to purchase the rights of said first party under said mining lease, and shall have made payment of $10,000 thereunder, after first payment, that then the rights of the second parties hereunder shall be assignable."

After the defendants had taken possession of the property in question, and on the 16th day of July, 1919, a contract in writing was entered into between the defendants and the Niangua Mining & Royalty Company, a corporation, which contract was in effect an option to purchase said mining property by the Niangua Mining & Royalty Company from defendants, and on July 22, 1919, a supplementary contract in writing was entered into between the Niangua Company and the defendants concerning the property in question, making certain changes and modifications in and of the terms and provisions of the former contract of July 16, 1919, between the Niangua Company and the defendants.

The evidence discloses that these last mentioned contracts were acquiesced in by the plaintiff, Hare Mining & Milling Company, with knowledge on its part.

The president of the plaintiff, Hare Mining & Milling Company, testified that the defendants informed him that they had sold the property to the Niangua Mining & Royalty Company, and that he agreed to a modification of the payments and to a reduction of the payments due the plaintiff company, in order to favor the defendants, and on August 14, 1919, the plaintiff company and the defendants entered into a supplementary contract in writing concerning said property therein, and thereby amending and modifying certain conditions and terms of the original contract of May 22, 1919, between the plaintiff company and the defendants.

This contract of August 14, 1919, after referring to the contract of May 22, 1919, recites that on July 16, 1919, the defendants entered into an agreement with the Niangua Mining & Royalty Company for sale of the property in question to it, and further recites the payments to be made by Niangua Mining & Royalty Company, and that the defendants exercised their option granted by contract of May 22, 1919, and have paid the sum of $25,000 to plaintiff, leaving a balance of $75,000, less certain royalties.

It sufficiently appears from the testimony that the defendants entered upon the property in question, and under the contract of May 22, 1919, and in a short time thereafter interested the Niangua Mining & Royalty Company and exercised their option of purchase from the plaintiff and entered into the supplemental contract with plaintiff, the object and purpose of which was to modify the original contract of May 22, 1919, to conform to the defendants' contract with the Niangua Company.

During all of this time payments were made to the plaintiff until there was paid it the sum of $71,829.95. The evidence further shows that the Niangua Company paid to defendants under their contract of July 16, 1919, about the sum of $120,000 of the agreed purchase price of $150,000. It further appears from the evidence that the Niangua Company began having difficulty in meeting its payments in August, 1920, and that defendants thereby defaulted in their payments to the plaintiff company.

It further appears that on or about the 5th day of August, 1920, W. S. O'Bannon filed his application as a stockholder, and on behalf of other creditors of the Niangua Company asking for a receiver. A receiver was appointed and directed to take possession of the property optioned by plaintiff to defendants, and in turn optioned by defendants to the Niangua Company. Insolvency and inability to pay its debts were the grounds urged by W. S. O'Bannon and conceded by the Niangua Company.

After the receiver was appointed by the district court of Ottawa county, and on the 30th day of October, 1920, the defendants gave the receiver and the Niangua Company notice that their rights under the contract under which that company claimed title were forfeited, and thereupon the defendants filed their petition in intervention in the receivership case No. 4229, setting forth the contracts the defendants had with the plaintiff company and with the Niangua company, and praying that the receiver and the Niangua Company be adjudged to have no right or equities in the property, and that interveners be let in to immediate possession.

On December 3, 1920, the plaintiff com-

pany served notice upon defendants, reciting that whereas defendants had repudiated the contracts of May 22 and August 14, 1919, it, the plaintiff, accepted this repudiation and demanded that defendant deliver immediate possession of the property to it.

The plaintiff company then filed a motion to be made a party defendant, with leave to plead in the receivership case No. 4229. This motion was followed by a motion to discharge the receiver for the reason that the plaintiff company was the legal owner of the property in the receiver's hands. This motion was followed by the separate answer and cross-petition of the plaintiff company. This answer alleges that plaintiff was the owner of the property. It set forth the contracts it had with defendants, and that said contracts had been breached and repudiated by defendants, and that it had accepted said repudiations. It prayed for possession of the property.

This answer of the plaintiff was followed by a motion for judgment on the pleadings. This motion admits the creditors have equities which entitled them to a sale of the premises.

The contentions of the plaintiff company set forth in all its pleadings in the receivership case were denied by the court in that case, and the controverted property with other property was by the court, ordered sold. It was sold, the sale approved, the liens of the several lien claimants in said action established and allowed, and the proceeds of said sale distributed upon and pursuant to such established liens.

The court in the instant case found that in receivership case No. 4229, the amount of plaintiff's claim against the defendants herein was fixed and, determined by the court in said cause No. 4229 at and in the sum and amount of $32,966.23, with interest at 5 per cent, from August 1, 1921, and that judgment for said sum was in said cause No. 4229 awarded said plaintiff herein against said defendants herein, in rem, and a lien upon the controverted property established in plaintiff's favor, and that upon said sum and amount so fixed and determined, and in furtherance of the liens so established, the plaintiff herein realized and received the sum and amount of $22,268.75 from the sale of said mining property, and pursuant to the order and judgment of the court, and that said plaintiff herein in said cause No. 4229 especially and expressly waived personal judgment for any and all sums by reason of said contract aforementioned against each and all of the defendants herein.

This finding of the court is fully and amply sustained by the undisputed evidence disclosed by the record in the instant case.

From the judgment rendered in the receivership case no appeal was taken by the Hare Mining & Milling Company, plaintiff herein, and said judgment became final.

The proceedings in case No. 4229 are incorporated in the record before us, and under the pleadings filed therein there was put in issue the rights and liability of the plaintiff and defendants under the contracts entered into between them, and the trial court in that case in determining the amount of indebtedness adjudged the amount of indebtedness due from the defendant to plaintiff and rendered a judgment in rem therefor. All of the evidence that enters into the doctrine of res judicata is to be found in the record before us. There is identity of courts and of parties and of subject-matter and a final judgment or decree fixing the respective rights of the parties. The court found in the instant case that the causes of action presented and declared upon by plaintiff and defendants in cause No. 4229 are the same and identical with the cause of action declared upon in the instant case, and properly concluded as a matter of law that the judgment in the receivership case was a bar and estoppel against plaintiff recovering in the instant action.

In the case of McDuffie v. Geiser Mfg. Co 41 Okla. 488, 493, 138 Pac. 1029, 1031, it is said:

"The essence of estoppel by judgment is that there has been a judicial determination of a fact, and the question always is, has there been such determination? and not, upon what evidence or by what means was it reached? * * * The leading case upon the question of to what extent a former adjudication may be pleaded in bar is that of Cromwell v. Sac County, 94 U. S. 351, 24 L. Ed. 195, where Mr. Justice Field laid down the following rule, which has been consistently adhered to by that court: 'In considering the operation of this judgment, it should be borne in mind, as stated by counsel, that there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties, and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible mat·

ter which might have been offered for that purpose. * * *' "

See Engle et al. v. Legg et al., 39 Okla. 475, 135 Pac. 1058, and the recent case of Dickson v. Mackey, 108 Okla. 11, 233 Pac. 423.

The record in this case discloses that plaintiff consented to the sale of the property by the receiver in cause No. 4229, and to the transfer of its lien for the unpaid purchase price to the proceeds of sale to the end that the property could be conveyed free of liens, and that upon a distribution of the proceeds of sale, which amounted to $30,000, the plaintiff accepted $22,269.75, and waived any further claims against the proceeds of the sale.

The trial court found and decreed that plaintiff expressly waived, in the receivership case, personal judgment for any or all sums by reason of said contract against each and all of the defendants. The record shows that the question was asked in the receivership case whether the plaintiff company was asking a personal judgment against the defendants, and the answer was that it was not.

The record clearly shows that the Hare Mining & Milling Company, plaintiff herein, entered case No. 4229 on the theory asserted in all its pleadings in that cause, that it was the legal owner and entitled to the immediate possession of the property in question as against the defendants and the receiver. This theory was based upon the proposition that defendants had repudiated the contract to purchase; that the repudiation had been accepted by it, and therefore was entitled to re-enter upon the property and retain the $71,000 paid by defendants on the purchase price. Under such a state of facts the plaintiff could not claim absolute ownership, and at the same time claim that defendants were indebted for the balance of the purchase price. The two remedies were inconsistent, and the plaintiff elected which remedy it would pursue, and an election of remedies once made with full knowledge of the facts is final.

"Where the purchaser defaults in payment of the price, the vendor may, as a general rule, either sue to forfeit the contract and recover possession, if out of possession, or sue for the price, though the contract provides for forfeiture." Rose v. Rundall, 86 Wash. 422, 150 Pac. 614.

In the case of Herbert v. Wagg et al., 27 Okla. 674, 117 Pac. 209, it is said in the fifth pagarraph of the syllabus:

"Where the law gives several means of redress or kinds of relief predicated on conflicting theories, an election of one, with knowledge, operates as a bar to the subsequent change to, or adoption of, any other."

"When a party has two remedies proceeding upon opposite and irreconcilable claims of right, the one adopted excludes the other." James K. McMahan v. Mora M. McMahan (S. C.) 115 S. E. 293. (See, also, 9 R. C. L. 958; 959; 2 R. C. L. Supp. 906.)

From a careful examination of the entire record and of the briefs of counsel for the respective parties, we think the judgment of the trial court should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 34 C. J. p. 818, §1236; 15 R. C. L. 963; 3 R. C. L. Supp. p. 510; 4 R. C. L. Supp. p. 1026; 5 R. C. L. Supp. p. 860. (2) 20 C. J. p. 38, §33.