MAGNOLIA PETROLEUM CO. v. OUART et al.

No. 32002.   April 8, 1947.

Rehearing Denied Feb. 16, 1947.
Second Petition for Rehearing Denied April 27, 1948.

*192 P. 2d 698.*

Walace Hawkins, of Dallas, Tex., W. R. Wallace, of Oklahoma City, and I. C. Saunders, of Shawnee, for plaintiff in error.

Crump & Carver, of Wewoka, and Foy Edwards, of Shawnee, for defendants in error C. J. Ouart and Leila Ouart.

Reily, Reily & Spurr, of Shawnee, for defendant in error George K. Hunter.

BAYLESS, J.   The Magnolia Petroleum Company has appealed from a judgment decreeing C. J. Ouart and Leila Ouart a 7/48ths interest and Eva F. Hunter a 5/95ths interest in the 1/8th royalty in the lease in controversy and a money judgment for their prorata part of the royalty funds impounded by Magnolia at the date of trial.   The interests of other persons were determined by the judgment, but we are concerned only with the controversy between Magnolia and the parties named above.

This controversy involves the interpretation of an oil and gas lease, Producer's Form 88, executed by the Ouarts in 1938.   The lease described an entire 40-acre tract of land, although the Ouarts only owned an undivided in-

terest in the west half of this tract, which fact was known to Magnolia. Magnolia took five separate leases covering all or part of the land involved at various times during the year 1937 and the first half of 1938. Three of these leases, including the Ouarts' lease, described the entire 40-acre tract. One of the leases described "all interest in entire 40-acres", and the remaining lease covered a part of the west half of the 40-acre tract. Three of these leases, including the Ouarts' lease, were to "remain in force for a term expiring April 23, 1942, and as long thereafter as oil or gas or either of them is produced from said land by lessee." The leases provided for a delay rental of $1 per acre. The last delay rental, in the sum of $5.84, was paid to the Ouarts in April, 1941. The receipt on the bottom of the rental check provided:

"In full payment of: Rental for twelve months, payable 9 day of May, 1941, on forty acres covered by oil and gas lease recorded in . . ."

In August, 1941, Magnolia drilled a producing oil well in the southeast ten acres of the 40-acre tract. Shortly thereafter they drilled a well in the northeast quarter of the 40-acre tract which was not a commercial producer. Magnolia accepted division orders signed only by those owning royalty in the southeast ten acres and we assume it paid the 1/8th royalty to such owners for a period of time at least, until payment was suspended, although there is no proof of such payment in the record. On July 8, 1942, C. J. Ouart filed an action in the district court of Pottawatomie county, No. 19062, against Magnolia, alleging the execution of the lease covering the described 40-acre tract, the interest owned by him in the west 20 acres of the tract, that there had been no development on the west 20 since the execution of the lease, that Magnolia had obtained a large producing well in the southeast ten acres, and that same had drained oil from under his property. He asked to have the lease canceled and to recover damages for drainage. Magnolia's answer admitted the execution of the lease and plaintiff's ownership in the west 20 acres; but alleged it had kept plaintiff's lease in full force and effect by making developments thereon, pleading in detail the drilling of the two wells mentioned above, denying the allegation of drainage and that it would be prudent or profitable

"to further drill any other oil or gas well on any portion of said premises at this time, or was so at any time prior thereto; . . . that by reason of the facts . . . stated it has fulfilled all of its duties toward plaintiff under the terms of said contract, which is still in full force and effect."

Ouart's reply was in the nature of a general denial of all affirmative allegations contained in Magnolia's answer.

At the commencement of the trial Ouart's attorney stated to the court that he adopted Magnolia's theory that the lease covered the entire 40-acre tract. He orally amended his petition and prayer to show that he was entitled to a portion of the royalty from production from the southeast ten acres. The following discussion then took place:

"The Court: Do you have any stipulation now to make as to what ownership of land the plaintiff has in that 40? Mr. Crump: We haven't stipulated, and they are estopped from showing it, because under their answer they state the lease covers the whole of said 40 acres. I will read the answer. If that is not true, they are out on a limb and they are now estopped. They say the lease covers the entire 40, and we adopt their theory."

Magnolia did not at that time or any subsequent time offer to surrender or terminate Ouart's lease, but has steadfastly maintained that the lease covering the entire 40-acre tract remained in full force and effect by reason of development and production in the southeast ten acres. On March 29, 1943, the court rendered judgment in favor of Ouart, decreeing him to be the owner of an undivided 7/48ths interest in the

oil, gas, and mineral rights under said lease, and decreeing a money judgment for production prior to the date of trial. A motion for new trial was filed but not acted upon. A few weeks later Magnolia filed a separate action, cause No. 19337, in the nature of a stakeholder's suit, alleging the aforesaid production, that payment of the royalty had been suspended because of conflicting claims, and praying the court to determine who should be legally entitled to share in the royalty payments. The answer of the Ouarts alleged they were entitled to 1/8 th royalty as provided in the various leases in the proportion that their individual ownership bore to the entire 40 acres covered by the leases. They pleaded the judgment in cause No. 19062 rendered March 29, 1943, and prayed that their interests be determined in accordance with said judgment. Magnolia's reply denied that Ouarts were entitled to receive any royalty since production was not had from their land, stating that the contemporaneous leases, including the Ouarts' lease, were not communitization or unitization leases but were separate, individual leases of individual owners of portions of the 40-acre tract; that both parties had so construed the contract; and that the Ouarts, by their acquiescence with full knowledge of the facts as to production and distribution, were now estopped from claiming any interests in the royalty.

The Ouarts' lease contained the following provisions:

"To deliver to the credit of the lessor, free of cost in the pipe line to which he may connect his wells, the equal 1/8 part of all oil produced and saved from the leased premises.

"If said lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein, then the royalties and rentals herein provided for shall be paid the said lessor only in the proportion which lessor's interest bears to the whole and undivided fee".

The parties stipulated as to most of the facts involved. The following is quoted from the stipulation:

"It is further stipulated and agreed that the Magnolia Petroleum Company paid the rental on said oil and gas lease on or before the 9th day of May, 1939, 1940, and 1941, in the amount of $5.84 per annum, a photostatic copy of said Magnolia Company vouchers showing payment of said rentals being attached hereto marked 'Exhibit E-1' and made a part hereof."

After hearing all the evidence the court, on its own motion, consolidated the two cases. It then rendered judgment, which for practical purposes was the same as the judgment rendered in cause No. 19062, and Magnolia has appealed from the latter judgment.

Magnolia urges that the Ouarts' lease cannot be construed to be a communitized or unitized lease and that Ouarts are not entitled to proceeds from production from land which they do not own or in which they have no interest. The Ouarts contend that it should be so construed. It is not necessary to pass upon this question other than to hold that the Ouarts' lease, considering all of the facts and circumstances involved, was ambiguous and therefore subject to construction by the court. We hold that if the Ouarts' lease is kept in force and effect after the expiration of its term, by reason of production on a portion of the described lease in which Ouarts admittedly own no title, then it follows as a matter of law that the lessee is obligated to pay royalty to the Ouarts on a prorata basis. We do not hold, or even intimate, that this is the proper construction of the lease, but considering the ambiguity, Magnolia could so interpret the lease. The Ouarts were entitled to some form of relief. They were entitled either to have the lease canceled or to share in the production from the southeast ten acres. Magnolia elected to defend on the theory that the lease had not terminated because

of this development and production. Relying upon Magnolia's interpretation of the contract, the Ouarts abandoned their claim of right to terminate the lease and to recover damages for drainage. Thus, in effect, Magnolia was successful in the first action to the same extent as if the case had gone to trial on the theory of Ouarts' first petition, and the court had denied their right to cancel the lease. By their election or interpretation of the contract Magnolia received a definite benefit and the Ouarts surrendered a valuable right. Magnolia is now estopped by its pleadings and theory of the case to assert that it is not obligated to pay royalty to the Ouarts under the terms of the lease. The two positions are entirely inconsistent. Magnolia is bound by the theory of the case on which it went to trial.

19 Am. Jur. 704, §72, reads as follows:

"The rule that a party will not be allowed to maintain inconsistent positions is applied in respect of positions in judicial proceedings. As thus applied it may be regarded not strictly as a question of estoppel, but as a matter in the nature of a positive rule of procedure based on manifest justice . . . Certainly the elements of reliance and injury, while often considered, do not enter into such so-called estoppel to the same extent that they do in equitable estoppel proper. The principle requiring consistency in judicial proceedings is, however, customarily considered a form of equitable estoppel, . . .

"The rule against inconsistent positions applies generally to positions assumed not only in the course of the same action or proceeding, but also in proceedings supplemental thereto, including proceedings for review or retrial and even in separate actions or proceedings involving the same parties and questions."

It is not necessary to rest this decision on the doctrine of election of rights or remedies. However, the following principles of law, discussed under this subject by analogy, appear to be appli-

cable: In Hare Mining & Milling Co. v. Keys, 120 Okla. 217, 251 P. 77, at page 80, we held:

" 'Where the law gives several means of redress or kinds of relief, predicated on conflicting theories, an election of one, with knowledge, operates as a bar to the subsequent change to, or adoption of, any other.

" 'When a party has two remedies proceeding upon opposite and irreconcilable claims of right, the one adopted excludes the other.' James K. McMahan v. Mora M. McMahan, 122 S.C. 336, 115 S.E. 293, 26 A.L.R. 1295."

See, also, 18 Am. Jur. 130, §4; Intertype Corporation et al. v. Pulver, 65 F. 2d 419, certiorari denied, 54 S. Ct. 75, 78 L. Ed. 571; Bancroft's Code Practice & Remedies, §192.

The Ouarts gave up their right to cancel the lease by reason of Magnolia's election to treat the lease as being in force and effect. They surrendered the valuable right to have their property developed for oil and gas. Summer's Oil and Gas, Permanent Edition, §395 states:

"When a landowner grants a lease of his land . . . for a nominal initial consideration, and the lessee agrees to pay as a return therefor a share of the oil or gas produced from the land, or a rental for each producing well, it is apparent that the principal consideration for the grant is the promise of the lessee to pay the royalties or well rentals. The payment of rents or royalties to the lessee is, however, contingent upon production. . . ."

Magnolia urges that Ouarts have taken inconsistent positions in view of their seeking to cancel the lease and later seeking to recover royalty under the terms of the lease. There is no question but that such claims are inconsistent, but there is no element of estoppel because the Ouarts abandoned their original causes of action and adopted Magnolia's pleadings as a basis for relief. They derived no benefit under the theory of their first petition and Mag-

nolia suffered no detriment thereby. See 18 Am. Jur. 141, §18; Lester v. Fields, 171 Okla. 442, 43 P. 2d 87.

George K. Hunter, husband of Eva F. Hunter, has filed a motion to dismiss the appeal of Magnolia insofar as she is concerned stating therein that Eva F. Hunter died on November 7, 1944, which was subsequent to the perfecting of this appeal, and that more than one year has elapsed since her death without the action having been revived against her personal representatives or successors. Magnolia does not seek to revive the action and agrees with Hunter that the appeal should be dismissed, but requests this court to hold that the Ouarts and Eva F. Hunter obtained a joint judgment against it and that the cause of action of both parties and the judgment are not abated. We hold that the judgments of said parties are several and not joint, and that the appeal shall be dismissed as to Eva F. Hunter only. Tucker v. Miller, 55 Okla. 631, 155 P. 591; Bowdish v. Williams, 89 Okla. 99, 214 P. 118. We express no opinion as to the abatement of the Eva F. Hunter judgment, as that question is not properly before the court at this time.

The judgment in favor of the Ouarts is affirmed and the appeal as to Eva F. Hunter is dismissed.

DAVISON, V.C.J., and RILEY, OSBORN, CORN, and GIBSON, JJ., concur. HURST, C.J., concurs specially in result. WELCH, J., concurs in result. ARNOLD, J., dissents.

---

On Rehearing.

HURST, C.J. (specially concurring on rehearing). I agree that the appeal as to Hunter should be dismissed. I also agree that the judgment in favor of Mr. and Mrs. Ouart should be affirmed, but for reasons other than those stated in the majority opinion.

The arguments largely revolve around these questions: (1) Under the issues made by the pleadings and evidence, did the court have jurisdiction to award the Ouarts royalty in addition to the full ⅛ royalty awarded to the owners of the mineral interest in the southeast 10 acres on which the producing well is located? (2) Should the Ouart lease be construed to give the Ouarts a royalty of 7/48 of the oil and gas produced from any portion of the 40 acres covered by the lease, despite the fact that they owned no mineral interest in the east 20 acres? And, (3) should the judgment awarding the owners of the mineral interest in the southeast 10 acres a full ⅛ royalty be modified by deducting therefrom the royalty interest awarded to the Ouarts? I think the first two questions should be answered in the affirmative and the third in the negative.

The mineral rights in the 40-acre tract here involved are owned by many persons. Some own fractional interests in the entire 40 acres while others own fractional interests in part only of the 40 acres. Some own fractional interests of less than one acre. After it acquired the leases, Magnolia Petroleum Company acquired interests in the entire 40 acres, and two individuals own interests in the entire 40 acres. Eleven persons or corporations own the mineral interest in the southeast 10 acres, thirteen own the mineral interest in the northeast 10 acres, eight own mineral interests in the west of 7½ acres of the west half of the 40 acres, and 10 own mineral interests in the east 12½ acres of the west half of the 40 acres. Ouart owns a half interest in the west 7½ acres and a sixth interest in the east 12½ acres of the west half of the 40 acres, making his interest equal to 5.84 acres or 7/48th of the 40-acre tract, but he owns no interest in the east 20 acres.

During the years 1937 and 1938, the Magnolia Petroleum Company procured five separate leases, four covering the entire 40 acres and one covering the east 12½ acres of the west half of the 40 acres. All were on Producers 88

forms, but some varied slightly from others. The leases contain substantially the same terms.

The lease by Ouart and wife covered the entire 40 acres, and was executed on May 9, 1938, and was for a term expiring April 23, 1942, and as long thereafter as oil or gas is produced "from said land by lessee". It obligated the lessee to deliver to the lessors "the equal one-eighth part of all oil produced and saved from the leased premises," subject to this diminution clause:

"If said lessor owns a less interest in the above described land than the entire and undivided fee-simple estate therein, then the royalties and rentals herein provided for shall be paid lessor only in the proportion which lessor's interest bears to the whole and undivided fee."

Ouart was permitted to testify, over plaintiff's objections, that Mr. Dunaway, the agent of plaintiff who aided in closing the deal for his lease, told him that the interests in the 40 acres were so small and varied that the lease on the 40 acres would have to be taken as one lease and that is why the leases were made to expire on the same date, and "we would share and share alike", and "I would get one-eighth in all the royalty relating to the whole interest". Mr. Fisher, another lessor, testified that Dunaway told him that his interest would be paid "according to the royalty I owned in the forty". Mr. Hunter, a lessor who also represented the Magnolia in securing leases on the land, testified that he told Ouart that "he would get his proportionate part of the royalty regardless of where the well was drilled", and "we thought we were signing community leases".

1. Appellant argues that, under the issues made by the pleadings and the stipulation signed by the parties and filed at the commencement of the trial, the court was without power to award a royalty of more than one-eighth to the owners of all the mineral interests, and that its judgment awarding to Mr. and Mrs. Ouart 7/48 of the one-eighth royalty in addition to the full one-eighth royalty awarded to the owners of the mineral interest in the southeast 10 acres was beyond its jurisdiction. It bases this contention largely upon this clause in said stipulation:

"It is further stipulated and agreed by the parties hereto that the plaintiff had a right to institute this action as a stakeholder of the funds claimed by the defendants and have the court decree the interest of each in said funds tendered by the plaintiff, representing the one-eighth (⅛) royalty interest of the oil produced on the land described in plaintiff's petition."

I do not believe this stipulation can be construed to mean that the Ouarts could not insist that in any event they were entitled to 7/48 of the royalties from production from any portion of the lease. In their answer in this cause (No. 19337) they referred to the judgment that had been rendered in cause No. 19062 and alleged that they were entitled in this cause to 7/48 of all royalties from production from the 40 acres covered by their lease. They introduced oral testimony, after the stipulation was filed, to the effect that they were led to believe by appellant's representative at the time the lease was executed that they would receive such royalty.

Appellant contends that this is an interpleader suit and that it is merely a stakeholder. Aside from the question of the effect of the order of consolidation, I think this contention is without merit. In strict interpleader, the plaintiff is a mere disinterested stakeholder, and the contest is strictly between the claimants to the fund. 15 R.C.L. 226; 30 Am. Jur. 220; 48 C.J.S. 55; Guaranteed State Bank v. D'Yarmett, 67 Okla. 164, 169 P. 639. The appellant does not meet this requirement. It claims ⅜ of the royalty by reason of the ownership of its mineral interest. It paid out the full one-eighth royalty to the owners of the mineral interest in the southeast 10 acres up to May 1, 1943, and cannot be a stakeholder as

to that part of the royalty, and it objects to paying out any further royalty accruing prior to May 1, 1943. In its petition, appellant asked general equity relief, and in its reply to the answer to the Ouarts it denied that they were entitled to any share of the royalty from the oil and gas produced from the southeast 10 acres, and asked that they be estopped from claiming an interest in the same and that it have such legal and equitable relief to which it may be shown entitled. Cause No. 19337 was, at most, one in the nature of interpleader. 48 C.J.S. 42; 30 Am. Jur. 224; Bank of Earlsboro v. J. E. Crosbie, Inc., 182 Okla. 327, 77 P. 2d 547.

Appellant asked that cause No. 19062 be consolidated with this cause. This request was at first denied, and appellant excepted to the denial, but later and after the evidence was all in the court on its own motion ordered the two cases consolidated, and appellant excepted to that order. Appellant, in its petition in error, assigned this action as error but does not here urge it. The sole issue in No. 19062 at the time judgment was therein rendered was whether appellant owed Ouart 7/48 of the one-eighth royalty by reason of production from the southeast 10 acres. This was also the issue made by the answer of the Ouarts and the reply of appellant thereto in No. 19337. The judgment previously rendered in cause No. 19062 was in effect superseded and lost its vitality by the judgment in the consolidated cause, from which this appeal was taken. It follows that by its motion to consolidate the appellant treated this action as one other than strict interpleader, and the court, by its order of consolidation, likewise so treated it. The effect of the consolidation was to give the court the power to try the consolidated cause the same as if the pleadings in the two causes had been filed in one cause, and to preserve the issues in No. 19062 unaffected by the stipulation. 1 C.J. 1135; 1 Am. Jur. 480.

It follows that the court had jurisdiction to decide the controversy between appellant and the Ouarts, made by their pleadings in both cases, as to the construction to be placed upon the Ouart lease and that the stipulation did not deprive the court of this jurisdiction.

2. The appellant contends that ordinarily the royalty due from production of oil and gas belongs to the owner of the land on which the well is drilled, and since the lease from Ouart and wife contains no entirety clause (Eason v. Rosamond, 173 Okla. 10, 46 P. 2d 471) or communitizing clause (Thomas v. Ley, 177 Okla. 150, 57 P. 2d 1186) this rule should be applied in the instant case, and that the court committed error in admitting evidence to the effect that the parties intended and understood that each owner should share in the royalties in the proportion that his interest bore to the entire and undivided fee of the 40 acres, thereby varying the terms of the written lease. It cites the following cases to support such contentions Kimbley v. Luckey, 72 Okla. 217, 179 P. 928; Pierce Oil Co. v. Schacht, 75 Okla. 101, 181 P. 731; Galt v. Metscher, 103 Okla. 271, 229 P. 522; Carlock v. Krug, 151 Kan. 407, 99 P. 2d 858; Eason v. Rosamond, 173 Okla. 10, 46 P. 2d 471; Brazell v. Brown, 169 Okla. 623, 38 P. 2d 17; Peerless Oil & Gas Co. v. Tipken, 190 Okla. 396, 124 P. 2d 418; Seal v. Banes, 183 Okla. 203, 80 P. 2d 657; Investors Royalty Co. v. Lewis, 185 Okla. 302, 91 P. 2d 764; and Louisiana Canal Co. v. Heyd, 189 La. 903, 181 So. 439, 116 A.L.R. 1260.

These cases are not in point. They involved controversies between joint lessors, or between lessors and their grantees, or between grantor and grantee of the fee as to the division or ownership of the royalties. In some of them the lessor sold a part of the leased premises after the lease was made, and the question in dispute was as to the ownership of the royalties or mineral

interests in the separate tracts after the leased premises were divided. Others involved joint leases by owners of contiguous tracts. Others involved leases containing entirety or communitizing clauses. Others involved the parol evidence rule. None of them involved controversies between the lessor and the lessee as to the amount of royalty due from the lessee to the lessor under the terms of the lease contracts, as here. The Ouart lease was signed only by Mr. and Mrs. Ouart, and there is no controversy between them as to a division of the royalties. None of the parties cites a case involving separate leases by the owners of undivided interests in a part only of the leased premises.

The question here relates to the meaning of the Ouart lease. It is not one of dividing the royalties between lessors, as argued by the appellant. There are two reasons why, in my opinion, the Ouarts are entitled to 7/48 of the one-eighth royalty.

a. When the Ouart lease is considered from its four corners, without reference to the oral testimony and the other circumstances contained in the record, and settled rules of construction are applied, it should be so construed. The diminution clause, above quoted, is couched in broad language and covers a situation where the lessor owns an undivided interest in a portion only of the leased premises as well as where he owns an undivided interest in the whole of the leased premises.

The only fair construction to be placed upon the lease is that the parties intended and understood that the terms "leased premises", "said land", and "above described land," used in the lease, referred to the entire 40 acres, the only land described in the lease, and not merely the west 20 acres, and the drilling of a well at any location on the 40 acres continued in effect the lease on the portion in which lessors owned an interest, as contended by the appellant in cause No. 19062, and

it would follow that the lessors are entitled to receive royalty from production obtained from any portion of the leased premises in the proportion that their interest bears to the whole and undivided fee of the 40 acres. Otherwise, the lease would be unfair to the lessors.

The rule is that in construing contracts the courts favor that construction which will make them fair to both parties, rather than a construction that will make them oppressive, inequitable and unreasonable. 12 Am. Jur. 791; 13 C.J. 540.

The construction which I would place upon the Ouart lease gives effect to the well established rule that doubt, if any, as to the meaning of an oil and gas lease will be resolved in favor of the lessor and against the lessee. New State Oil & Gas Co. v. Dunn, 75 Okla. 141, 182 P. 514; Garfield Oil Corp. v. Champlin, 78 Okla. 91, 189 P. 514; 24 Am. Jur. 551.

The evidence introduced on behalf of the defendants, above referred to and of which appellant complains, was consistent with this construction, and appellant was not harmed by such evidence.

b. When the oral testimony and other circumstances in evidence are considered along with the terms of the lease, it seems clear that the parties intended to communitize the separate interests in the 40-acre tract and treat it as an entirety. Otherwise, why did those who joined in the four leases on the 40 acres do so, when some of them owned undivided interests in a portion only of the 40 acres? Why did Magnolia procure leases under such circumstances, over a period of more than a year, several of them for terms ending at the same time? The presumption is that the lessors desired a wider spread so that, as was subsequently found to be true, if part was productive and part not productive, each would realize something from the royalty. And the presumption is that the lessee desired

to avoid drilling more wells than would reasonably develop the 40 acres. In Peerless Oil & Gas Co. v. Tipken, above, we laid down the rule that, when the separate owners of two contiguous tracts join in one lease on the two tracts, the presumption will be indulged that they intended that the royalty should be apportioned to them in the proportion that the acreage of each bears to the entire tract, unless a contrary intention or agreement is shown. Why should this same presumption not obtain when the owners execute separate leases, embodying substantially the same terms and covering the entire tract, as was done in the instant case? Why should the owner of a separate tract include his neighbor's land with his land in one lease, if such was not his intention? And why should the leasee take such a lease if he did not intend it to have such effect?

Appellant offered no evidence as to why it included the east 20 acres in the Ouart lease nor did it contradict the testimony introduced by Mr. and Mrs. Ouart. It states that the inclusion of the east 20 acres in the Ouart lease was inadvertently done, but it did not seek to reform the lease and it offered no evidence in support of such contention, which is made for the first time in this court. The fact that it took three other leases on this land under similar circumstances signed by persons owning an interest in a portion only of the 40 acres negatives such contention.

The appellant urges that the theory on which the trial court decided the case was erroneous and not in accordance with the issues made by the pleadings and evidence. This argument has reference to the finding of the court that Mr. and Mrs. Ouart were entitled to 7/48 of a one-eighth royalty "for damages for offset drainage . . . to be awarded in the nature of a bonus." But the rule is that if the trial court reaches the correct result and assigns an erroneous reason for his decision, this court will not disturb the judgment. Witt v. Garrod, 187 Okla. 14, 101 P.

2d 619; Ringer v. Byrne, 183 Okla. 46, 80 P. 2d 212. As pointed out above, the result reached is consistent with a proper construction of the Ouart lease.

3. In its petition, in the trial of the case, and in its briefs filed in this court, appellant has consistently stated and contended that the full one-eighth royalty should be paid to the owners of the mineral interest in the southeast 10 acres. Said owners filed an answer admitting the allegations of plaintiff's petition that they were entitled to the full one-eighth royalty, and I do not find where plaintiff filed a reply to such answer. Plaintiff did not ask to recover from such owners any of the royalty paid to them prior to May 1, 1943. The result is that none of such owners, other than appellant which owns a 3/16 mineral interest in the entire 40 acres, has filed a brief in this court. However, in a recent brief in support of its petition for rehearing appellant argues that, if this court should not agree with its contention that the Ouarts are entitled to no royalty out of the production from the southeast 10 acres, the amount allowed them should be taken from the one-eighth awarded the owners of the mineral interest in the southeast 10 acres and their share reduced accordingly. Under the circumstances just stated, I am of the opinion that this request comes too late.

For the foregoing reasons, I concur in the result reached by the majority.