## MAXFIELD v. MAXFIELD.
No. 35511.

Supreme Court of Oklahoma.
May 5, 1953.

Supplemental Opinion July 14, 1953.

Mart Brown, Clark Hurd, Oklahoma City, for plaintiff in error.

Miskovsky & Miskovsky, Leon S. Hirsh, Oklahoma City, for defendant in error.

CORN, Justice.

This is an appeal by defendant from a judgment rendered in an action brought by plaintiff to secure a decree of divorce, and for other relief, based upon an alleged common law marriage. An unduly voluminous record made up of sharply conflicting testimony, and containing innumer-

able exhibits of doubtful value, precludes a concise statement of the matters relative to each party's theory of the case. Disregarding numerous motions, applications and proceedings not particularly germane to the issues to be considered, examination of this record reflects the following matters.

These parties were married in 1933 and were the parents of one daughter, aged 13 when this action was filed. Their residence was at Hereford, Texas, where defendant had extensive farming and ranching interests. In 1944 they were divorced in that state, and a property settlement was effected whereby plaintiff received the home, $500 in cash and $50 per month for child support during the nine months of each year for which she had custody of the child. Defendant continued to live in Hereford, Texas while carrying on his business activities there, but spent considerable time in Amarillo, Texas and in Oklahoma City, where he usually stayed in his mother's home. Defendant importuned plaintiff to return to him and a reconciliation was effected, the parties finally agreeing to resume the marital relationship as husband and wife. Plaintiff sold her home and the family returned to Oklahoma City, where they registered at an apartment hotel as husband and wife, in February, 1949. Defendant continued to handle his business affairs and at times stayed in an Amarillo hotel for varying periods while looking after his affairs. The parties moved from the hotel to an apartment, but following the daughter's return from a vacation camp defendant purchased a residence in an exclusive neighborhood in Oklahoma City and a home was established. Because of defendant's alleged intemperate habits, emotional instability and cruel treatment the plaintiff brought this action December 15, 1949, seeking a divorce from the parties' consensual marriage.

The petition alleged substantially the foregoing facts, and that plaintiff had advanced defendant $10,000, which he used in purchasing the home, title to which was in his name; that defendant was worth over $100,000 and asked an order restraining him from selling or encumbering his property. Plaintiff asked a decree of absolute divorce, custody of the child, and reasonable support money and for the family home to be set over to her, permanent alimony, temporary attorney fees and suit money.

It further appears that on July 15, 1950, plaintiff filed petition in the district court of Oklahoma county seeking to set aside the property settlement rendered by the Texas court in 1944. Therein it was alleged that defendant obtained $10,000 from the plaintiff through duress and fear, that $1,500, thereof was repaid, but defendant had refused to repay the remainder; defendant had forced his attentions upon her, causing fear for her life and impairing her health, as well as having a disturbing influence upon the child. Plaintiff asked that defendant be restrained from coming into contact with her and the child; to have the property settlement vacated and an equitable part of defendant's estate set over as alimony, as well as having an additional portion placed in trust for the minor's benefit. A similar petition was filed in the district court in Texas where the divorce had been granted in 1944.

During trial of the present case defendant urged the allegations of such petitions, made subsequent to date of the alleged common law marriage, reflected a relationship devoid of the requisite elements of a recognizable common law marriage following the Texas divorce. This argument provides the basis for the contention that plaintiff is estopped to assert the existence of a common law marriage.

Defendant answered by general denial, and by specific denial of any cohabitation, resumption of marital relationship, or agreement to such effect. Further, that the Texas divorce effected a complete settlement of all property rights and such decree was entitled to full faith and credit, and plaintiff's efforts to set same aside estopped her to assert a resumption of the marital relationship. Upon trial the Texas proceedings were admitted in evidence showing same had been dismissed with prejudice.

Plaintiff replied by denial of all affirmative matters set out in the answer. After trial, and upon defendant being allowed to

amend his answer to conform to the proof, plaintiff was permitted to amend her reply to conform to the proof, it being shown such dismissal "with prejudice" was procured by fraud upon the Texas court; and, both petitions filed by plaintiff had been dismissed without prejudice prior to trial of this action.

A brief narrative of plaintiff's evidence shows that following the Texas divorce defendant frequently visited plaintiff and besought her to return to him, and once sought the services of a minister in an effort to effect reconciliation. In 1949 plaintiff succumbed to his importunities and agreed to return to defendant. He handled the arrangements for sale of the home, and arranged the move back to Oklahoma City, and on February 15, 1949, they began the return trip. Plaintiff acceded to defendant's urgings and they resumed marital relations. Shortly after arrival they secured accommodations in an apartment hotel where they registered as a family, and impressed all who observed them as husband and wife. The daughter was enrolled in a school where defendant was known to the principal, and defendant made no effort to negative the impression they actually were husband and wife.

At a later date they called on the principal of an exclusive denominational school, to enroll their daughter as a student, and defendant introduced plaintiff as his wife. During the summer a family disturbance resulted from plaintiff's mentioning the Texas property settlement and defendant returned to his Texas ranch. However, they were in touch with one another, and during this period and at defendant's request the plaintiff deposited $10,000 with defendant's brokers to assist him in his market investments. While defendant was in Texas plaintiff moved from the apartment hotel and rented an unfurnished apartment, but lived in the home of defendant's mother. During absence from Oklahoma City defendant, apparently handling his business, was registered in different hotels in several cities.

The parties previously had discussed purchasing a home, and upon defendant's return in August, 1949, he bought a residence in an exclusive addition, taking title to the property in his name. He made all necessary arrangements, purchased additional household goods, and effected all normal and necessary arrangements for establishing a home, including moving of his personal effects to this residence. The parties attended church meetings and school affairs together, and generally conducted themselves as husband and wife, so as to exclude any contrary idea. When in Oklahoma City defendant spent most of his time at this residence, although on some occasions he stayed at his mother's home. Following the final separation defendant sought to have plaintiff go through a ceremonial marriage, but this led to an altercation which resulted in plaintiff having to flee from the home. The evidence also showed defendant was addicted to the use of alcohol, and was emotionally immature and unstable.

There was ample testimony from numerous disinterested witnesses, corroborating plaintiff's testimony that the parties held themselves out to the public as husband and wife. Unfortunately it became necessary to introduce the evidence of these parties' young daughter, and her evidence fully corroborated the other evidence in many particulars, particularly as concerns the issue of cohabitation and that they lived as a family unit from the time of their return to Oklahoma City.

A great deal of the record is devoted to the matter of defendant's worth, and his financial statements for the years 1946–1950 were produced in evidence. Defendant attempted to establish that despite such financial statements he was heavily obligated, unable to borrow additional operating capital, and that in reality was worth nothing like the amount indicated by the evidence. It was shown that, at the time of trial, defendant had liquid assets of approximately $100,000, and a probable net worth of approximately $400,000, excluding the value of a growing wheat crop.

Other than admitting having borrowed $10,000 from plaintiff, all of defendant's evidence was directed toward positively contradicting every matter upon which plaintiff relied as tending to establish exist-

ence of the common law relationship, any agreement to resume marital relationship or cohabitation with plaintiff. Plaintiff's evidence was contradicted by defendant's testimony and that of his mother, who testified defendant never spent any nights in Oklahoma City except at her home. There was evidence to establish that defendant had contributed to the support of his daughter commensurate with her needs, during the years following his divorce from plaintiff. An extended résumé of this evidence is unnecessary. It is sufficient to note that the trial court mentioned the irreconcilability of the testimony, and that some of the evidence was so conclusive that the court was moved to denominate portions of defendant's contradictory evidence as perjury; that defendant was subject to his mother's control and direction and apparently thought more of his property than he did of his wife and child. Our consideration of this record impels the acceptance of the trial court's conclusions.

Defendant's evidence did disclose plaintiff's execution of certain instruments as a single woman during the period of the common law marriage. The court considered such fact, but noted that this was done during the time when plaintiff was under a misapprehension as to the strict legal effect of her resumption of the marriage relation, and while plaintiff was represented by counsel selected by defendant's sister, and who likewise represented defendant's mother. The court found plaintiff was not chargeable with having voluntarily represented herself as a single woman, and could not be charged with an estoppel.

Following a lengthy discussion of the issues and the evidence the trial court offered these parties further opportunity to make some amicable adjustment of their difficulties. Being advised no settlement was possible the court rendered judgment for plaintiff, holding that the parties had entered into a valid, common law marriage in the latter part of February, 1949, and had been duly and legally married after that date. Based upon this finding, the court entered judgment granting plaintiff a divorce and custody of the child; awarded her personal judgment for $10,000; ordered conveyance of the family residence to plaintiff, together with all household goods and furnishings; awarded her $36,-000 alimony, payable $300 per month, with 6% interest on delinquent installments; $150 per month child support, until minor's majority or further order of the court; gave plaintiff a 1947 model automobile, and ordered payment of $7,500 additional attorneys fees and costs of the action.

■■■ Defendant's first contention is that plaintiff is estopped by her own actions to assert the existence of a common law marriage, and relies upon the rule announced in Magnolia Petroleum Co. v. Ouart, 200 Okl. 258, 192 P.2d 698, to the effect that a party will not be permitted to assert inconsistent positions in respect to the position taken in judicial proceedings. This rule cannot be controlling herein for two reasons. First, review of the Ouart case, supra, shows that the rule laid down is limited by the language used, 200 Okl. at pages 261 and 262, 192 P.2d at pages 701–703, recognizing that, although claims may be inconsistent, no estoppel is worked where the original cause of action is abandoned without the party having derived any benefit thereunder, and without the defendant having suffered detriment as a result thereof. Second, in Colvert Ice Cream & Dairy Products Co. v. Citrus Products Co., 179 Okl. 285, 65 P.2d 455, syllabus 3, announces the standard to be used in ascertaining whether a litigant's previous, inconsistent claims have worked an estoppel as respects the claim or action sued upon. Casual reference thereto reflects the absence of the requisite elements in the present case.

■■■ The further argument by defendant that plaintiff should be estopped in the present case because of inconsistent and contradictory statements concerning her status as a married woman during the period of the common law marriage is not persuasive. The trial court recognized such inconsistencies in plaintiff's evidence, but expressly found she was not chargeable with voluntarily representing herself as an unmarried woman, or of the consequences

of her acts. This finding and conclusion is entirely supported by the record.

Defendant's second contention is stated as follows:

"Where the issues are joined in an . action for divorce based on a common law marriage and the existence of the marriage is denied, it is error to refuse the defendant the right to reasonably cross-examine plaintiff on said issues; error to refuse defendant the . right to submit evidence and to be heard on the fact of marriage; and error of the court in not making a finding on said issue prior to the enforcement of any orders in relation thereto."

The argument offered in support thereof discloses a diverse discussion covering (1) rules of law in Oklahoma relative to common law marriages; (2) the essential elements of common law marriages as announced in our recent decisions; (3) a tenuous discussion based upon what is referred to as the "background of the case", but which must be conceded to be a discussion of certain matters reflected by the evidence in the light most favorable to defendant.

A large portion of the argument is based upon a series of events which transpired between filing of the original petition herein January 1951 and the trial upon the merits had beginning December 20, 1951.

As briefly as possible we note that when petition herein was filed an ex parte order was entered ordering defendant to pay alimony, support money and child support and $1,500, temporary attorney fees and costs. Defendant then filed motion to vacate this order and denied remarriage or cohabitation with plaintiff. Upon hearing thereon a compromise arrangement was worked out, whereby plaintiff was allowed $250 per month child support and $750 temporary attorneys fees, such amounts to be credited upon defendant's indebtedness to plaintiff in the event defendant prevailed. Under such arrangement plaintiff's counsel agreed not to ask for alimony during pendency of the action, the case not then being at issue. The court's order was that defendant pay $250 per month, beginning February 17,

1951, payable by March 1. Defendant filed his answer on March 28 and on May 29, 1951, plaintiff made application for citation, defendant having failed to make the temporary payments. Defendant failed to appear and a bench warrant was issued for his arrest. This matter was set for hearing, but was not presented until October 22, 1951, at which time the trial court found defendant guilty of contempt and ordered him to pay $2,000 child support by December 20, 1951. At this hearing defendant attempted to cross-examine plaintiff concerning the marriage and to offer direct evidence thereon, but the trial court limited the inquiry to matters occurring subsequent to February 16, 1951. Defendant did not object to the trial court's rulings in the contempt proceedings, and no error was assigned or exception taken to the trial court's action. No claim of error is made relating to the court's rulings on the contempt proceedings, which took place prior to the trial.

Defendant relies upon the rule announced in Utley v. Rowe, 192 Okl. 546, 138 P.2d 71, that in an action for divorce from a common law marriage, where defendant denies existence thereof, he cannot be compelled to comply with orders for temporary alimony, suit money and attorneys' fees until a hearing and determination is had upon the question of existence of the marriage relation. Under this record the rule has no applicability. The rule is that assignment of error going to matters not occurring at the trial and not presented to the trial court in the motion for new trial will not be considered on appeal. Hurt v. Garrison, 192 Okl. 66, 133 P.2d 547; Morriss v. Barton, 200 Okl. 4, 190 P. 2d 451.

The remaining argument under defendant's second proposition deals with the essentials necessary for establishing a common law marriage. This may well be considered in conjunction with the third contention to the effect that the judgment rendered is contrary to law and not sustained by the weight of the evidence.

The oft-considered question of common law marriage has received our attention most recently in, In re Graham's Estate,

169 Okl. 568, 37 P.2d 964; Vann v. Vann, 186 Okl. 42, 96 P.2d 76; In re Trope's Estate, 190 Okl. 453, 124 P.2d 733; In re Blackhawk's Estate, 195 Okl. 390, 158 P.2d 168; Quinton v. Webb, 207 Okl. 133, 248 P.2d 586. We here note that each cited case involved a situation wherein one alleged spouse was deceased and the action was by the survivor to establish the fact of such marriage. Whereas, in the present case the trial court had the benefit of having both parties to such marriage before him at the trial.

■ The requisite elements of a common law marriage so often have been stated as to hardly require citation of authority. Such a marriage requires competent parties, who enter the relationship by mutual agreement, exclusive of all others, consummating the arrangement by cohabitation and open assumption of other marital duties. See In re Trope's Estate, supra, and authorities therein cited. And, such relationship must be established by evidence that is clear and convincing. Richard v. Richard, 172 Okl. 397, 45 P.2d 101. However, the relationship may be proved through both direct and circumstantial evidence. Sam v. Sam, 172 Okl. 342, 45 P.2d 462.

The evidence upon which the trial court based his judgment holding that a valid common law marriage existed between the parties has been briefly noted. On appeal defendant advances essentially the same arguments, relative to the sufficiency of the evidence to establish a common law marriage, as have been offered in earlier cases. It is true only plaintiff gave oral testimony to establish the essentials of a common law marriage. Likewise it is true that there were no witnesses to the parties' agreement and understanding. But, we are cited to no case requiring the parties to make a formal acknowledgement of their agreement. In the Vann case, supra, it was noted that, under the authority of Bothwell v. Way, 44 Okl. 555, 145 P. 350, a common law marriage may be consummated in either of two ways, viz., "by cohabitation as man and wife or their mutual assumption openly of marital duties and obligations." [186 Okl. 42, 96 P.2d 79.]

■ Without prolonging the discussion it is sufficient to remark that under the evidence herein the trial court, in fairness, could not have reached a different conclusion. The burden was upon plaintiff to establish the facts essential to constitute a valid common law marriage. In re Trope's Estate, supra. Under this record the plaintiff fully discharged such burden. Assuredly the common law marriage was established by clear and convincing proof, and the trial court's judgment is supported by the clear weight of the evidence.

■ The further argument is offered that because of the short duration of the parties' relationship and the situation of the parties, the trial court abused his discretion in awarding plaintiff exorbitant and excessive amounts in settlement. In view of the defendant's financial condition, the mode of living to which he and his family were accustomed, as reflected by this record, we are of the opinion the trial court was eminently fair in his settlement of the financial aspect of this controversy. Such fairness is apparent when it is considered that the record evidence would have supported a far greater alimony award than that which the trial court saw fit to grant plaintiff.

It further appears that the trial court ordered defendant to pay temporary alimony and child support pending appeal, but that defendant failed to comply fully with such order. Moreover, it appears that there is presently pending a motion for alimony pending appeal, directing this court's attention to the fact that defendant was in arrears in such payment to the extent of $3,700. It shall be the further order of this court that defendant pay all delinquent sums due under the order of the trial court, with interest at six percent from the date of such delinquency. The judgment is in all other things affirmed.

### Supplemental Opinion

■ The opinion promulgated in the above styled and numbered case, on May 5, 1953, is hereby amended in the following particulars, to wit:

A motion for allowance of attorneys' fees on appeal has been filed in this Court.

The motion for allowance of attorneys' fees on appeal is granted, and the opinion is ordered amended to reflect the allowance of the sum of $1,500, as a reasonable and proper fee on appeal.

The order of the trial court requiring payment of $1,500 temporary appellate fee to defendant in error's attorneys is vacated.